1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2    Name RosBaugh , Cody
         (Last)         (First)         (Initial)

3    Prisoner Number _____ J-81708

4    Institutional Address Pelican Bay State Person, SHU ; Po,B

5    7500 , Crescent City, Cp. 95532

6    ====================================================

7    **UNITED STATES DISTRICT COURT**
     **NORTHERN DISTRICT OF CALIFORNIA**

8    Cody Rosbaugh    (Plaintiff)
     (Enter the full name of plaintiff in this action.)

9                                                    Case No. _____
                                                     (To be provided by the clerk of court)
10                    vs.

11   Robert Horel, warden; et al.,                   **PETITION FOR A WRIT**
                                                      **OF HABEAS CORPUS**
12              (Defendant(s))

13

14   (Enter the full name of respondent(s) or jailor in this action)

15

16   ====================================================

     <u>Read Comments Carefully Before Filling In</u>

17   <u>When and Where to File</u>

18        You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

     PET. FOR WRIT OF HAB. CORPUS          - 1 -

1  <u>Who to Name as Respondent</u>

2         You must name the person in whose actual custody you are.  This usually means the Warden or

3  jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5  respondents.

6         If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11         1. What sentence are you challenging in this petition?

12             (a)     Name and location of court that imposed sentence (for example; Alameda

13                     County Superior Court, Oakland):

14  _____          _____

15                     Court                              Location

16             (b)     Case number, if known _____

17             (c)     Date and terms of sentence _____

18             (d)     Are you now in custody serving this term?  (Custody means being in jail, on

19                     parole or probation, etc.)            Yes _____      No _____

20                     Where?

21                     Name of Institution: _____

22                     Address: _____

23         2. For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS          - 2 -

3.  Did you have any of the following?

    Arraignment:                   Yes _____    No _____

    Preliminary Hearing:        Yes _____    No _____

    Motion to Suppress:        Yes _____    No _____

4.  How did you plead?

    Guilty _____    Not Guilty _____    Nolo Contendere _____

    Any other plea (specify) _____

5.  If you went to trial, what kind of trial did you have?

    Jury _____    Judge alone _____    Judge alone on a transcript _____

6.  Did you testify at your trial?         Yes _____    No _____

7.  Did you have an attorney at the following proceedings:

    (a)    Arraignment            Yes _____    No _____

    (b)    Preliminary hearing      Yes _____    No _____

    (c)    Time of plea           Yes _____    No _____

    (d)    Trial                  Yes _____    No _____

    (e)    Sentencing            Yes _____    No _____

    (f)    Appeal               Yes _____    No _____

    (g)    Other post-conviction proceeding    Yes _____    No _____

8.  Did you appeal your conviction?        Yes _____    No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal           Yes _____    No _____

        Year: _____    Result: _____

        Supreme Court of California    Yes _____    No _____

        Year: _____    Result: _____

        Any other court           Yes _____    No _____

        Year: _____    Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

1  petition?                                          Yes _____     No_____

2     (c)   Was there an opinion?                     Yes _____     No_____

3     (d)   Did you seek permission to file a late appeal under Rule 31(a)?

4                                                     Yes _____     No_____

5           If you did, give the name of the court and the result:

6           _____

7           _____

8  9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9  this conviction in any court, state or federal?    Yes _____     No_____

10      [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16    (a)   If you sought relief in any proceeding other than an appeal, answer the following

17          questions for each proceeding. Attach extra paper if you need more space.

18    I.    Name of Court: _____

19          Type of Proceeding: _____

20          Grounds raised (Be brief but specific):

21          a._____

22          b._____

23          c._____

24          d._____

25          Result: _____Date of Result:_____

26    II.   Name of Court: _____

27          Type of Proceeding: _____

28          Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1                    a._____

2                    b._____

3                    c._____

4                    d._____

5                    Result: _____Date of Result:_____

6       III.   Name of Court: _____

7               Type of Proceeding: _____

8               Grounds raised (Be brief but specific):

9                    a._____

10                  b._____

11                  c._____

12                  d._____

13                  Result: _____Date of Result:_____

14      IV.   Name of Court: _____

15              Type of Proceeding: _____

16              Grounds raised (Be brief but specific):

17                   a._____

18                 b._____

19                 c._____

20                 d._____

21                 Result: _____Date of Result:_____

22   (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                 Yes \_\_\_\_\_     No\_\_\_\_\_

24            Name and location of court: _____

25   B. GROUNDS FOR RELIEF

26       State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS     - 5 -

1  need more space.  Answer the same questions for each claim.

2      [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One:_____ " SEE Attached Petition "

6

7  Supporting Facts:_____

8

9

10

11  Claim Two:_____ " See Attached Petition '

12

13  Supporting Facts:_____

14

15

16

17  Claim Three:_____ " See Attached Petition "

18

19  Supporting Facts:_____

20

21

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS     - 6 -

1      List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3  of these cases:

4  _____

5  _____ " SEE ATTACHED PETITION" _____

6  _____

7  Do you have an attorney for this petition?                    Yes_____      No  X

8  If you do, give the name and address of your attorney:

9  _____

10      WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on ___2·5·08___                        _____

14            Date                                    Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

Cody Rosbrugh #J-81708
Po. Box # 7500 / D1-213⊾
Crescent City, CA. 95532
Pelican Bay State Prison, SHU
IN PRO PER

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cody Rosbrugh<br>Plaintiff<br><br>v.<br>Robert A. Horel, et. Al.,<br>Defendant(s) | CASE NO. _____<br>Petition For Writ Of Habeas<br>Corpus; And Memorandum Of<br>Points And Authorities. |

INTRODUCTION
I

I, Cody Rosbrugh, (Plaintiff), am an inmate confined at Pelican Bay State Prison (P.B.S.P.); In The Security Housing Unit (SHU); Crescent City, California.

Plaintiff arrived at Pelican Bay State Prison on the 6th of August, in the year of 1998, to complete a determinate

(1)

(SHU) term of seven (7) years in segregation from High Desert State Prison; And furthermore, was given a consecutive determinate (SHU) term for something that wasn't even Necessarily just, With a mend of the year 2010.

Petitioner was retained in segregation per classification action for, an indeterminate (SHU) term based solely on evidence that, and/or conduct, which was ruled insufficiently unusable, per Castillo v. Alameida, case No. C-94-2847-mJJ-JCS; And see Also; California Department Of Corrections And rehabilitations, D.o.m. 86|020.7 - 861030.10.; Hence, Plaintiff had fruitfully been punished enough for.

Plaintiff had obtained a Memorandum (dated; August 26th, 2002); In RE; ..."INDETERMINATE Security Housing Unit (SHU) status for Disruptive And/or suspected Prison Gang Membership And/or Association..."

In this memorandum, it stipulated that Pelican Bay State Prison (P.B.S.P.) officials And/or staff had a directive to not negate institution staff responsibilities, to identify "ANY" inmates [suspected] of Gang Membership and/or Association; whether or not, it is in fact correct. This said document was confiscated via a pod raid (search), but Plaintiff made a copy and has handwritten (verbatim), the entire document. (See; Attached Exit. "A", pgs. 1-3; dated August 26th, 2002).

## PARTIES
## II

1.) <u>Cody Rosbrugh</u>, (Plaintiff), A prisoner confined at Pelican Bay State Prison (PBSP); Security Housing Unit (SHU);

2.) <u>Robert A. Horel</u>, Warden at Pelican Bay State Prison (PBSP), responsible for operation, management, And Security of All inmates and Staff;

3.) <u>SCOTT KERNAN</u>, Acting Director of Institutions Division, responsible for oversight of [ALL] Institutions And Administrations, and/or Administrative Staff of Prisons;

4.) <u>K. Brandon</u>, facility Captain at Pelican Bay State Prison (PBSP), responsible for operation, management, And Security of facility; And also participates in the Classification process;

5.) <u>D. Barneburg</u>, Sergeant at Pelican Bay State Prison (PBSP), responsible for the screening of inmate(s)/Parolee Appeal form(s) at the Second level of Appeals; And to investigate, question, And verify facts, pertaining to inmate Appeals;

(3)

6.) <u>T.S. Buchanan</u>, INSTITUTIONAL Gang Investigator (I.G.I), And Correctional Officer (%), responsible for Any/All validation(s) to inmate(s), Housed at Pelican Bay State Prison (PBSP), Also responsible for the investigation(s), questioning, And verifying of Any and All facts, pertaining to Any inmate(s) validation;

7.) <u>C. Countess</u>, Institutional Gang Investigator (I.G.I), And Correctional Officer (%), responsible for Any/All validation(s) to inmate(s), Housed at Pelican Bay State Prison (PBSP), Also responsible for the investigation(s), questioning, And verifying of Any and All facts, pertaining to Any inmate(s) validation;

8.) <u>J. A. McKinney</u>, Correctional Lieutenant (Lt.), Institutional Gang Investigator (IGI) at Pelican Bay State Prison (PBSP), responsible for overseeing Any and All investigations, questioning, And verifications of All validations upon inmates Housed at Pelican Bay State Prison (PBSP), Security Housing Unit (SHU).

9.) <u>B. Thornton</u>, Institutional Gang Investigator (IGI), And Correctional Officer (%), responsible for Any/All validation(s) to inmate(s), Housed at Pelican Bay State Prison (PBSP), Also responsible for the investigation(s), questioning, And verifying of Any and All facts, pertaining to Any inmate(s) validation;

(4.)

10.) C.E. WILBER, Correctional Counselor II (CCII), And inmate Appeals coordinator at Pelican Bay State Prison (PBSP), Security Housing Unit (SHU), responsible for the screening, filing, And log Number assignment(s) of inmate/Parolee Appeal form's (602), As well as the ensurrance of "Due Process" of said inmate Appeal's.

## FACTS
## III

Plaintiff Submitted a (CDC-602) Inmate/Parolee Appeal form on July 12th 2007, seeking relief through the prison's administrative remedies. In THIS (602), Plaintiff stated that on July 9th, 2007, he recieved a "128-B" chrono (Gang chrono), in which it stated that an Institutional Gang Investigator (IGI), Correctional Officer (%) C. Countess, conducted a cell search of an Inmate, and in the cell search, discovered an "address book", with plaintiffs' ailing grandmothers home address inside. Plaintiffs' grandmother has been ailing for many years now; Furthermore, (%) C. Countess confiscates said address Book to create something out of nothing; And suggests that the address of Plaintiffs' grandmother is [supposedly] being used for "third-party" correspondence, in which also is considered Gang activity; And with no further evidence to support his

finding's, is using this [supposed] information for Plaintiffs' validation.

Plaintiff objected to this obsurdity, per Castillo v. Alameida, settlement "... addresses cannot and will not be used as source documents..." (Castillo v. Alameida, case No. C-94-2847-mJJ-JCS); Section III; And ALL pertinant sections); Making this [supposed] 128-B chrono in-admissable as evidence, And should be stricken in it's entirety from Plaintiffs' central file, Under U.S. Constitution, XIV[th] Amendment; And VIII[th] Amendment.

Furthermore, Pelican Bay State Prison (PBSP) has in place, a "Red-Stamp", used to stop third-party communications by stamping [every] piece of "Out-Going" correspondence.

On July 18th, 2007, Plaintiff recieved his (602) Appeal form back, unresolved, and without an administrative Appeals log Number. The appeals Coordinator, a C.E. Wilber, returned Plaintiffs' (602) appeal, stating that Plaintiffs' appeal is an Anticipated action at this point; 128-B chrono is simply staff observation's as documented, and therefore not subject to Appeal, until such time as an action is taken; (see Attached Exhibit "B", pgs 1-11, dated July 18th, 2007.)

On July 19th, 2007, Plaintiff tried the formal level of review, and stated "... Dissatisfied," and requested this 128-B chrono be removed from his central file on the basis that it is

(6)

"Unfounded" and for the same reasons listed in part "A". On July 24th, 2007, Appeals Coordinator C.E. WILBER, sent back Plaintiffs' (602) Appeal, and with the same response as prior. (See; Attached Ext. "B", pg 5 of Plaintiffs' (602) appeal; dated both July 19th, and 24th, 2007).

On July 27th, 2007, Plaintiff submitted a second inmate/ Parolee (602) Appeal form against the Appeals Coordinator C.E. Wilber, on the grounds that he stated that Plaintiffs (602) Appeal was not subject to Appeal; And an anticipated action. Both State and Federal Laws are clear in that inmates are, and will be allowed to Appeal [ANY] and [ALL] information concerning [ANY] inmates Validation Status; whether it be deemed, "... Staff observation, view point, etc.,); OR to it being an observation upon an 128-B form from (IGI); Wherewith as long as it's printed on a "formal" document (such as a 128-B chrono), And put OR placed into [ANY] inmate(s) Central file, it is automatically deemed subject to Appeal. (See; Attached Ext. "B", pg.6; dated July 27th, 2007).

On July 31st, 2007, Appeals Coordinator C.E. Wilber returned Plaintiffs Appeal regarding the 128-B form ... "Granted"; C.E. Wilber stated that regarding the 128-B chrono (July 6th, 2007), it is appealable And has been assigned to the formal

(7)

level of review, per latest direction from the Inmate Appeals Branch. (See; Attached Exhi."B", pg 6; dated July 31st, 2007; Log NO. 007-01668).

On August 6th, 2007, Plaintiff submitted another Inmate/Parolee (602) Appeal form; Based on the acts of an institutional Gang Investigator (IGI), Correctional Officer (C/O) T.S. Buchanan, He gave Plaintiff two (2) Confidential Information (1030) forms. The first was dated May 22nd, 2006, in which it stated that Plaintiff [supposedly] forwarded [supposed] information regarding Aryan Brotherhood politic's.

The second one (CDC-1030 form), dated July 16th, 2004, stipulated that Plaintiff [supposedly] gave orders to other white inmates. Both (CDC-1030) forms not only are inadmissable as evidence in Court, etc..; But de facto, call light upon the veracity and validity of the institutional Gang Investigator(s) (IGI), And/or staff findings, or reports not only on Plaintiff, but to every other inmate whom has succombed to this violation of both eighth and fourteenth Amendments, as well as the color of law. (See: Attached Exhi."C", pgs. 1-8; dated August 6th, 2007).

On August 28th, 2007, Plaintiff recieved his (602) Appeal from C.E. Wilber, Appeals Coordinator; Stating that Plaintiff could not

Appeal these two (2) CDC-1030 forms, because O.B.S. has yet to take action on this information; Therefore "Screened out"/"rejected" Plaintiffs' (602) Appeal, thus barring Plaintiff from proceeding further with Administrative remedies and/or seeking administrative relief. Under State/Federal Laws governing said issues, C.E. Wilber is instilling not only prejudicial traits, but also retaliative actions on Plaintiffs' person. (See: Attached Exhi "C", pgs. 1-8; dated August 28th, 2007)

On August 29th, 2007, Plaintiff Submitted an inmate/Parolee (602) Appeal form on C.E. Wilber, Appeals Coordinator here at Pelican Bay State Prism (P.B.S.P.) a second time, for his ineptability to process Plaintiffs' (602) Appeal dated August 6th, 2007, for no other reason as to why except, that Plaintiff was "anticipating action" or "decision". Under State/Federal rules governing the regulations of said action; Plaintiff is in regulated rules to Appeal said (CDC-1030) forms for "... where with as long as it is put or established upon a formal document (such as a CDC-1030 form); And then placed into [ANY] inmates Central file, it is Automatically Subject to Appeal. This is the Second time Plaintiff has had to file a Seperate (602) Appeal form on C.E. Wilber's person for "Screening out" Plaintiffs' (602) Appeal form: (see; Attached Exh. "D", pg. 1-3; dated August 29th, 2007); Also see; Attached Exhi "B", pg. 6; dated

July 27th, 2007), where to C.E. Wilber recanted his denial, and sent Plaintiffs (602) Appeal to Second level of review; By-passing formal level of review.

On September 4th, 2007, Plaintiff recieved a Second level reviewer's response; To wit denied; And a Sergeant O. Barneburg reviewed this matter, and determined that Plaintiffs Appeal [did not] meet the criteria set forth in California Code of Regulations (CCCR) title 15, Section § 3084.1; But, sergeant O. Barneburg is inadequately advised upon this provision set forth by (Castillo v. Alameida, Case No. C-94-7847-MJJ-JCS);

On September 5th, 2007, Plaintiff recieved his (602) Appeal dated August 29th, 2007, with yet another denial from C.E. Wilber; Stating that Plaintiff absolutely had the right to dispute (Appeal) his In-Active review (COC-1030) forms, But to no avail, Plaintiffs' Appeal is [supposedly] premature based on the D.O.M.; And/or (C.CR) title 15 § 3084, which "dictate" screening decisions; Thus barring Plaintiff to proceed with the administrative process and to seek administrative relief. (see; Attached Exht. "O", Pg. 3; dated September 5th, 2007.)

On September 27th, 2007, Plaintiff resubmitted his (602) Appeal to the third level of review; Stating that he was dissatisfied

By the denial of Plaintiffs' Second level of review, for this 128-B chrono is Supposition; and not based upon fact, but rather a story invented by (I.G.I) C. Countess. This [does] adversely affect Plaintiff because, it is false accasation's and/or information on my Central file, And Plaintiff wants it removed. (I.G.I.) Cannot just find [any] address, and make-up elaborate Stories to keep inmate(s) in the Security Housing Unit (SHU), on [Supposed] active Gang Status. Second level of review did not make [ANY] such Steps in order to investigate these inconclusive accusations that (I.G.I) C. Countess made; And therefore [did not] complete there task in conducting a thorough inquiry into the matter at hand. (see; Attached Exh. "B"; pg-2, Section "A"; dated September 21st 2007).

On October 4th 2007, Plaintiff filed an inmate/parolee (602) Appeal form in regards to two (2) Confidential Disclosure forms (CDC-128-B); Along with two (2) forms that appear to be Institutional Gang Investigator(s) (IGI) chrono's, to be looked upon as "Investigative Documents: [ALL] above mentioned documents(s) were signed by (IGI) Correctional Lieutenant (Lt.) J.A. McKinney; (I.G.I) Correctional Officer T.S. Buchanan.

Now, in their [Artificial] investigation, (%) T.S. Buchanan tries to establish some Sort of basis that Plaintiff [Supposedly]

is an active Prison Gang member, and even goes to the
lengths of outside elements to find a Link with Plaintiffs'
Name; Through Local Law Enforcement; The Office of Correctional
Safety; Parolee/Leads; And W.S.I.N..., to wit, he found out
that Plaintiff Not only [IS] in-active, but that none of
these "agencies" even Know Plaintiff exists. (See; Attached
EXH. "E", pgs. 1-7; dated October 4th, 2007).

On October 9th 2007, Plaintiff recieves his (602) Appeal form
back, with a (CDC-1824) "Reasonable Modification or Accomidation
Request form, from C.E. Wilber, stating that Plaintiffs action
and/or decission has not yet occured; And that Such issues
are not appealable Until they happen; according to State and
Federal Courts, As long as said issue is put upon and
established in a "formal document" (Such as CDC-1030;
CDC-128-B; etc..,), And then placed into [ANY] inmate(s) Central
file, it is automatically Subject to Appeal. (See; Attached
EXH. "E", pg. 8; dated October 9th, 2007).

On October 12th 2007, Plaintiff Submitted an inmate/Parolee
(602) Appeal form, stating that on October 5th 2007, Plaintiff
recieved a (CDC-128-B) chrono, Stipulating that while conducting
a cell search of an inmate's House (Bentley #J-31514), on September
19th, 2007, (IGI) B. Thornton found a 1999 Calander with three

(3) names on different dates of the year, clearly depicting "Birthday's" of said mentioned; But nothing more. Furthermore, (IGI) Birthornton's [Opinion] is that this is a direct association between [supposed] validated inmates.

Plaintiff requested that this 128-B chrono be stricken from Plaintiffs' Central file; And [ANY] other file associated with Plaintiffs', for it does not prove anything, least of all "Gang Association"; Furthermore, that (IGI) staff be retrained on what [IS], and what [IS NOT] Gang activity, Association; And that the Institutional Gang Investigator(s) (IGI), stop trying to Pad files with [false] chronos.

On the same day, Plaintiff recieved his (602) Appeal from C.E. Wilbee, whom stated that Plaintiff was attempting to Appeal a (CDC-128-B) information chrono of Staff's "observations" as they (staff) perceived it; And that Plaintiff could not do so. Per rules and regulations governing validation process, once an observation is [recommended] that action be taken based on their observation, it is no longer an observation. (see; Attached EXH: "F", pgs. 1-5, dated October 12th, 2007.)

On October 16th, 2007, Plaintiff wrote (CCII) C.E. Wilbee, Appeals Coordinator a letter, And sent it along with Plaintiffs' (602) Appeal, dated October 12th 2007, in hopes of gaining a log

number, and therefore processing Plaintiff's (602) Appeal.

On October 17th, 2007, Plaintiff recieved both his letter and (602) Appeal from C.E. Wilber, in which he stated the same as before, and without processing Plaintiffs' (602) Appeal to the next level of review. (See; Attached Exit. "F", pgs 1-5; dated both October 12th and 16th, 2007).

On December 18th, 2007, Plaintiff recieved his third and final level of reviewer's response; Denied by N. Grannis, chief Inmate Appeals Branch; In which was stated that the 128-B Chrono is fully consistant with existing regulations and Policy; And there is [NO] need to modify or remove the chrono from Plaintiffs' Central file. N. Grannis further states, that further use of the chrono in a [supposed] gang validation is not subject to Appeal at this time; However, the Appellant can Appeal the use if and when it is Used, to support such action. Third level Reviewer did not do [ANY] type of independent investigation into this matter other than re-state second level's findings. (See; Attached Exit. "B", pg. 11; dated December 18th, 2007).

Plaintiff now asserts that his retention in Segregation on an indeterminate (SHU) term, based soley on insufficent, uncooborative, and incoherent investigative work by Pelican Bay State Prison Institutional Gang Investigator's violate Plaintiffs'

(14)

Constitutional Rights Under Both State and Federal Law; Clauses of Due Process; Equal Protection, Double Jeopardy; And Liberty;

Plaintiff stipulates that the Institution is clearly in violation of it's own Rules and the Underground Policy in which it relies upon cannot be enforced without violating state and federal rights Under it's Constitutional guarentees.

Plaintiff has exhausted [ALL] state remedies of this administration; And thus seeks relief in this Honoralbe Court.

/// 
/// 
///

# CONTENTION'S
## IV

I. THE ARBITRARY APPLICATION OF RULES USED TO RETAIN PLAINTIFF IN SEGREGATION VIOLATES THE "EQUAL PROTECTION CLAUSE", AND THE RELIANCE ON AN UNDERGROUND POLICY VIOLATES STATE REGULATIONS AND LAW'S.

II. THE EXTREME CONDITION'S, DEPREVATION'S, AND DURATION OF PLAINTIFFS' CONTINUED RETENTION IN SEGREGATION CONSTITUTES AN "ATYPICAL AND SIGNIFICANT HARDSHIP" WHICH TRIGGERS A PROTECTED LIBERTY INTEREST.

III. THE INDETERMINATE SEGREGATION OF PLAINTIFF IN SHU, BASED ON A "PREDICTIVE" THEORY VIOLATES ALL BASIC PRINCIPLES OF DUE PROCESS.

IV. THE CONTINUED CONFINEMENT OF PLAINTIFF IN SEGREGATION AFTER HIS EXPIRED DETERMINATE SHU-TERM BASED SOLELY ON SUPERFICIAL, UNCOOBORATED AND/OR UNCONSTITUTIONAL INVESTIGATIVE PROCEDURES, WHICH PLAINTIFF

IS STILL BEING PUNISHED, VIOLATES THE
STATE AND FEDERAL PROTECTION'S AGAINST
DOUBLE JEOPARDY.

## PRAYER FOR RELIEF

Plaintiff is without remedy save by WRIT of HABEAS CORPUS;

Wherefore, Plaintiff Pray's the court;

1.) ISSUE a writ of Habeas Corpus;
2.) Order release of Plaintiff to General Population;
3.) Declare rights of Parties;
4.) Declare Plaintiffs' claims to be true;
5.) Appoint councel And Award reasonable Attorney fees;
6.) Grant any other, And further relief, the court deem's proper And just.

Dated; __2-5-08__ , 2008

Respectfully Submitted,

|s| _____

Cody Rosbrugh /*J-81708

In Pro Per

<u>VERIFICATION</u>

I, Cody Rosbrugh, # J-81708, State;

I am the Plaintiff in this action herein; I have read the foregoing Petition for WRIT of Habeas Corpus, And the facts stated therein are true of my Knowledge, except as matters that are therein stated on my own information and belief, And as to be those matters I believe to be true.

I declare Under Penalty of Purjury that, the foregoing is true and that this declaration was executed at Pelican Bay State Prison, Crescent City, California, in the County of Del Norte, on this __5TH__ day of __FEBRUARY__, in the year __2008__.

Respectfully Submitted

ISl _____

Cody Rosbrugh / # J-81708

<u>IN</u> <u>PRO</u> <u>PER</u>

MEMORANDUM OF POINT'S AND AUTHORITIES

I

THE ARBITRARY APPLICATION OF RULES USED TO
RETAIN PLAINTIFF IN SEGREGATION VIOLATES
THE "EQUAL PROTECTION CLAUSE", AND THE RELIANCE
ON AN UNDERGROUND POLICY VIOLATES STATE
REGULATIONS AND LAWS.

The continued segregation of Plaintiff on an indeterminate
SHU-Term, based solely upon [supposed] document(s) such as
"Confidential Information (CDC-1030) forms"; 128-B chrono's,
are not only prejudical towards Plaintiff, but are blaintedly
construed by Pelican Bay State Prison Officials to keep Plaintiff
and/or inmate(s) in general, from [supposedly] presenting
a risk, which at most is "unpredictable" to the general
population (GP), is illegal, inmoral, and violates Plaintiffs'
state and federal Constitutional rights.
   Plaintiff entered the California Department of Corrections
and Rehabilitations on October 19th, 1995, and has participated
in educational programs; work programs; and religious programs
while housed in General Population; Plaintiff has functioned and
enjoyed these programs afforded to him in the General
Population(s) in the California Prison System until his placement
in Segregation on August 5th, 1998; It was only then, that

Plaintiff recieved other rule's violations, then as now. Plaintiff was held past his expired segregation SHU-Term, which during that time he recieved other [supposed] confidential information (CDC-1030) from(s) and/or 128-B chronos, that are being relied upon by the institution now, to retain Plaintiff in Segregation on an indeterminate SHU-Term, with no end in sight.

This retention in SHU segregation of Plaintiff violates, the "EQUAL PROTECTION CLAUSE" of the fourteenth (14th) Amendment, which is a federally protected right guarenteed by the Constitution of the United States; It requires states to treat similary situated people alike, it prohibit's a State from denying [ANY] person within it's Jurisdiction, the "EQUAL Protection" of the law.

> "... THE 14th AMENDMENT'S EQUAL PROTECTION
> CLAUSE TO ANYONE, CITIZEN OR ALIEN, who IS
> SUBJECT TO LAW'S OF A STATE..." (PLYER V.
> DOE, 457 U.S. 202 (1982)).

"THE EQUAL PROTECTION CLAUSE" extend's to Prisoner(s) of the State as well, and to those Law's, rules and regulation's, issued by the State.

> ..."The touchstone of Due Process is protection
> of The Individual Against Arbitrary action

Of Government..." (Dent v. West Virginia, 129 U.S. 114, 123 (1889))[4]

Plaintiff asserts that institutional arbitrary retention and continued segregation beyond his expired determinate term based solely on [supposed] Confidential Information (CDC-1030) form(s), and 128-B chrono(s), violates the "Equal Protection Clause".

The institution claims that Plaintiff posed an "Unpredictable" risk to the General Population and Staff if he were to be released from SHU, (see; Attached EXHIBITS "A-F"); On this theory, the questions must be [what] constitutes an "Unpredictable" risk, [what] class of inmates fall Under that classification, [what] rule regulation, Law, or guideline, lawfully govern that class or Status of inmate(s), and more importantly, [How] are they applied to all inmate(s) who fall Under that theory or classifications.

11  Also see; CRUZ V. BETO, 405 U.S. 319 (1970); "Protection on Buddist Practices when other religious practices were permitted violates EQUAL Protection"; MCGINNIS V. ROYSTER, 410 U.S. 263 (1973), "Different Procedures for awarding good time credit to jailed and non-jailed defendant(s); Violated EQUAL Protection. Also; Farmer v. Carlson, 685 F.Supp. 1335 (M.D. Pa. 1988); Dolphin v. Mansin, 626 F.Supp. 229, 239 (D.Conn 1986).

Plaintiff asserts there are no lawfull procedures for such theories or classifications for inmate(s) as in Plaintiffs circumstances. For rules and regulations pertaining to any such classification, the institution relied on an interpretation of California Code of Regulations, title 15 § 3341.5(c), in part, by order of the Deputy Director of Institutions Division, (see Attached Exh. "A", pgs. 1-2; Dated August 26th, 2002).[21]

    CCR. TITLE 15 § 3341.5(c): States in Part;

    (c)". . . Security Housing Unit (SHU), An inmate
    whose conduct endangers the safety and security
    of Other's or the security of the institution,
    shall be housed in "SHU".

Plaintiff asserts that this section does not alone govern an inmate(s) placement or retention in SHU- segregation, the section as a whole must be followed and administered. The institution can not, and should not rely on the Department Memorandum which is an underground Policy. This Memorandum States several illegal and unconstitutional Policies to order Warden(s), to place and retain inmate(s) in segregation; It orders administrative staff to retain and place into

---

21 for full text of Title 15 § 3341.5(c), see Attached Exhibit "A", pgs. 1-2 (Duplication); dated August 26th, 2002, herein.

(22)

Segregation [All] inmate(s) who are currently serving a determinant SHU-term, regardless of whether the inmate is not eligible for additional determinate SHU assessment. (see; Attached Exh."A", pgs.1-2; dated August 26th 2002).

This memorandum further orders that inmate(s) that have been [supposedly] identified and processed as [supposed] inmate(s) of Prison Gang Membership/association, or assessed [supposedly] by Confidential Information (CDC 1030's), or CDC-128-B chrono(s), shall be considered for indeterminate status.

The memorandum states...,

"... This direction is appropriate and within the parameter's of the California Code of Regulations, title 15, section § 3341.5(c)..." (see Attached Exh. "A", pgs. 1-2; dated August 26th, 2002).

However, as stated herein, the retention of inmate(s) and placement of inmate(s) in segregation for an indeterminate SHU term [is not] within the parameter's of CCR, title 15, section § 3341.5(c), as applied in the instant, even more so when as here, the inmate has not done anything wrong; has not violated [Any] rule or recieved any new SHU-term; All Plaintiff has done in this matter was, to complete his expired determinate SHU-term.

The institution's reliance on this departmental
Memorandum is wrong, [And] unlawful; It can not be enforced;

> "... Department of Corrections could
> not rely on Amendment of regulation
> incorporating new rule to enforce another
> regulation, where the latter regulation
> was not adopted in accordance with
> the administrative procedure act..." (see
> Faunce v. Denton, 213 CAL. Rptr. 122, 167
> Cal. App. 3d. 191 (1985)).

    The Administrative Procedure Act (A.P.A.) provides for
Judicial review of Prison Officials action's, it has been established
that Prison Classification Criteria must be promulgated constantly
with State (A.P.A.); (Stoneham v. Rushen, 156 CAL. App. 3d. 322,
203 CAL. Rptr. 20, 24-15 (1984)). A classification decision such
as in the instant matter and the guidelines of Policy used in
that decision, can and should be under the State (A.P.A.); (In
RE Wilson, 202 Cal. App. 3d. 661, 249 CAL. Rptr. 36, 40-42 (1983)).
    The Underground Policy used by Classification Committee, to
retain Plaintiff in Segregation violates the California Constitution
which indicates that when officials discretion is limited by
Substantive criteria or procedures, Due Process requires that
decisions actually be made based on these criterias, under the

California Constitution. Here, the institution looked outside of
those criterias to Unlawful means, and guidelines and applied
them to Plaintiff;

> "... freedom from Arbitrary Adjudication
> is a Substantive element of one's
> liberty ..." (People v. Ramirez, 25 CAL. 3d.
> 260, 158 CAL. Rptr. 316, 599 P. 2d. 622, 627
> (CAL. 1979)).[3]

Plaintiff furthermore assert's that because the institution
has failed to follow their own rules and regulations (D.O.M.
61020.7 - 61020.10), and relied upon an Underground Policy, they
are illegally retaining Plaintiff in Segregation.

Even if this court should deem that the institution has
acted Lawful, the court must find that the institution is in
violation of Plaintiffs' right's to EQUAL PROTECTION of the Law
provided to him under the 14th Amendment, which requires the
State to give similarly situated persons, or classes, similar
treatment under the law.

---

3] Also see; Toussaint v. McCarthy, 801 F. 2d. 1080, 1096
(9th cir. 1986); Spears v. Thigpon, CIV. NO. 87-H-790-S
(N.D. AlA. 1988); Gaul v. Wagner, CIV. NO. 87-6489 (E.O.
Pa. 1988).

In the case of "Castillo v. Alameida JR, case No.
C-94-2847-MJJ-JCS; it stipulates that;
    Paragraph #11, "... The policies and procedures
discussed in and/or on paragraph's #12 thru #21
Infra correspond to the independant Source item's"
discussed in title 15 § 3378 (c)(8), ..."

    Paragraph #15, "written material/communication;
(title 15 § 3378 (c)(8)(c) and (1) ... Staff must
have an articulable basis for [why] a written
material or communication is reliable of Gang
association or membership. Defendant(s) agree
that Staff [must] articulate and record [why]
a written material or communication [is] evidence
of [supposed] Gang association or membership based
on either the "explicite" or "coded" content of
the communication, with respect to greeting cards,
such as birthday cards, or get well cards; Staff
must record an articulable basis for [why] the
communication [is] of [supposed] Gang membership
or Association.

    Plaintiff refer's also to paragraph #19, of Castillo v.
Alameida JR, upon the use of an address, [supposedly]

used for three (3) way communication; where Plaintiff's grandmother's address is found inside another inmate's address book, unrelated to any and All merits of validation;

    Paragraph #19; "... Address book (cce. title 15 §3378 (c)(8)(2)); Defendant(s) agree that staff shall articulate basis for [why] the contents of an address book is/are evidence of Gang association/membership. This information shall be recorded by staff and inmate(s) provided with written form(s).."

    Clearly defendant(s), have not been following the rules and guidelines of Castillo v. Alameida JR.; And the Court agreement and settlement, And therefore inmate(s) should not be housed in these limits for indeterminate term's [AND] even more so, as the instant where Plaintiff has not violated [ANY] rule. (see; Plaintiffs' Attached Exh. "B", pgs. 1-11; Inmate 602 Appeal, dated July 12th, 2007; Also see; Castillo v. Alameida, Case No. C-94-2847-MJJ-JCS.)

    Even if this Court must deem that the institution has acted lawful, the Court [must] find that the institution is in violation of Plaintiffs' right to EQUAL PROTECTION of the Law, provided to him under the 14th Amendment which, requires the State to give Similarly situated person(s) or

(27)

classes similar treatment under the law.

"... Equal Protection does not require that all Person(s) be delt with identically but it does require that a distinction may have some relevance to the purpose for which the classification is made ..." (see; Baxstrom v. Herold, 383 U.S. 107, 111, 86 S. Ct. 760, 763 (1966)).

"... Equality is meaningless under unequal conditions"; (Morris v. Cohen, reason and Law 101 (1961)).

"A number of distinct meanings are normally given to the provision that there should be equality before the law. One meaning is that equality before the law only connotes the equal subjection of [all] to a common system of law, whatever it's content... A second theory asserts that equality before the law basically a procedural concept, pertaining to the application and enforcement of law's [and], the operation of the legal system... A third meaning normally

bourne by declarations that [All] are equal before the law; Perhaps no more than a variant of the second, is that State and individual before the law, should be equal...,; (see; Polyvious G. Polyvion... "The EQUAL PROTECTION of the law's..." (1-2) 1980),

"[T]He equal protection principle is exclusively associated with written constitution's and embodies guarenties of equal treatment normally applied not [only] to the procedural enforcement of law's, but also to the Substantive of their provisions. In other words, the equal protection of the law is normally and invariably treated as a Substantive constitutional principle, which demand's that law's will only be legitimate if they can be described as just and equal" (Polyvions G. Polyvion, "the EQUAL PROTECTION of the law, (#4) 1980)).

It is clearly a violation of Equal Protection in the

(29)

instant matter, as Plaintiff has set fourth and as applied.
Plaintiff should Prevail in this Claim!

## II

THE EXTREME CONDITIONS, DEPRIVATIONS
And Duration Of PLAINTIFF'S CONTINUED
RETENTION IN SEGREGATION CONSTITUTES
An "ATYPICAL And SIGNIFICANT HARDSHIP"
WHICH TRIGGERS A PROTECTED LIBERTIES
INTEREST.

In the instant, Plaintiff is confined to his cell for
twenty-two and a half (22½) hours a day; He lives alone
in his cell; Takes all meal's alone, in his cell; for one and a
half (1½) hour's a day, he is allowed out of his cell to WALK
approximately thirty (30) feet down the tier from which his cell
is located, to the empty exercise room; Plaintiffs' [only]
views of the outside, is straight up through the mesh top
roof of the exercise room; His segregation in the Security
Housing Unit (SHU), reduces human contact to an almost
non-existant state; Plaintiff is not allowed to interact with
other prisoner(s) or to participate in vocational, or employment

activities, nor is Plaintiff allowed to participate on [any] religious services, or exercise activities.

These severe conditions no doubt have an adverse psychological consequence;

> "... it is well expected that conditions such as those present in (SHU) SMU II, can cause Psychological Decompensations to the point that individual(s) may become incompetent..." (Miller v. Stewart, 231 F.3d. 1248, 1252 (9th Cir. 2000)).

Other courts have recognized that prison conditions remarkably similar to (SHU) can, adversly affect a person(s) mental health and well being, especially those whom are subjected to these types of conditions for a continuous amount of time; (Madrid v. Gomez, 889 F. Supp. at 1230.)[41]

---

[41] For further effects of (SHU) conditions, see; McClary v. Kelley, 4 F. Supp. 2d. 195, 208 (W.D. N.Y. 1998); Craig Haney and Mona Lynch regulating Prisons v. the future; A Psychological Analysis of SuperMax and Solitary Confinement, 23 N.Y.U. Rev. L. and Social Change 447 (1997).

A short stay under the severe conditions of (SHU) may not raise Due Process concerns,[5] But on the instant, Plaintiff has been subjected to these conditions over thirteen (13) years and his stay in segregation has already exceeded [ANY] determinate time Clause; And is thus forced, with an indeterminate stay, and has no realistic means of release from (SHU) segregation; The only possible means of release for Plaintiff, out of segregation is left to the "feelings" or discretion of institutional staff, in determining that Plaintiff no longer possesses the potential of an [Alleged] unpredictable risk and/or threat. The reality for Plaintiff is that he is likely to remain in what amounts to solitary confinement for, the rest of his natural life.

The circumstances and duration of Plaintiffs' continued confinement in (SHU) are clearly severe, And long enough to trigger a liberty interest; (See ., _Colon v. Howard_, 215 F.3d. 227, 230-232 (2d. cir. 2000); (Discussing cases and Holding that

---

[5] _Koch v. Lewis_, 216 F. Supp. 2d. at 1001, FN.*11; ... we do not rule out the possibility that certain stay's in SMU II (SHU) will trigger liberty interest's regardless of duration ..."; Also see; _Sealey_, 197 F.3d. at 586; "... Especially harsh conditions endured for a brief interval, and somewhat harsh conditions endured for a prolonged interval might both be "Atypical"..."

305-day confinement satisfied the "Sandin" standard; (Shoats v. Horn, 213 F.3d. 140, 143-44 (3d. cir. 2000) (Holding that segregation for eight (8) years triggered DUE PROCESS rights.)

These conditions on which Plaintiff is being subjected to illegally are, in contrast to those that Plaintiff would enjoy once more. If Plaintiff were to be released, he would have access to vocational training, work, religious and rehabilitative services, and recreational activities (such as team sports, Handball, Basketball, baseball, etc..)[6]; He would further be able to socialize with other inmate(s); And have better access to his family, and to be able to build and re-inforce that strong bond.[7] Furthermore, Plaintiff would be allowed phone calls, to call his family.[8]

> "... No hearing committee has ever conducted an individualized review of, the specific conduct of Plaintiff, relating to security concerns ..." In Toussaint v. McCarthy, 711 F. Supp. 536 (N.D cal. 1989), the ninth circuit stated that Annual review [does not] Sufficiently protect the "Liberty Interest" of prisoner(s) Held in segregation."

---

6.) Pelican Bay State Prison (SHU) does not provide these programs to (SHU) inmate(s).

7.) Pelican Bay State Prison is the farthest Prison North in California; And farthest from Plaintiffs' Home and family.

8.) Pelican Bay State Prison (SHU) does not allow inmate(s) Personal Phone Calls.

Furthermore, Plaintiff would be allowed contact visits with family and friends; These visits would become more of a reality for Plaintiff because he would be able to be housed in an institution, closer to home.[9]

The deprevation of Plaintiff involves a severe Liberty in which [ALL] are entitled to, under the Federal and State Constitutions;

"... Liberty is God's gift to humanity"; George W. Bush, President of The United States of America, State of the Union address (January 28th, 2003)...

The heart of the liberty deprevation is whether Plaintiffs' indefinate placement in (SHU) constitutes, an "Atypical and Significant hardship", in relation to the ordinary incident's of prison life". The Sandin test requires a case by case examination of both condition's of the inmate(s) confinement and the duration of the deprevation at issue: (SANDIN, 515 U.S. at 486, 115 s.ct.2293; Keenan v. Hall, 83 F. 3d. 1083, 1089 (9th cir. 1996), Amended by 135 F. 3d. 1388 (9th. cir. 1998);

_____

[9] Pelican Bay State Prison, (SHU), does not allow contact visit's with [any] persons; Visits are through glass window's, speaking through a phone for approximately one (1) hour; The distance and time allowed to visit, as well as the income bracket of most Prisoner(s) families, deter family and friends from visiting.

(34)

Sealy v. Giltner, 197 F. 3d. 578, 586 (2nd cir. 1999).

In Plaintiffs' case, the depravation is extreme in both degree and duration. (SHU) imposes some of the most harsh, cruel, and draconian conditions that can be found in a modern American Prison (Madrid v. Gomez, 889 F. Supp. 1146, 1227-1230 ( N.D. Cal. 1995).

The frame work for analysis is straight forward: "Sandin" and it's progeny established a two (2) part inquiry ... First, determining whether Plaintiffs' indefinate detention in (SHU) implicates a Constitutional Protected Liberty interest, once that is established, we examine the procedural and evidentiary safeguards afforded to Plaintiff, in order to decide whether there has been a depravation of due process. (Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed. 2d. 418 (1995); Zimmer Lee v. Keeney, 831 F. 2d. 183, 186 (9th cir. 1987), cert. denied, 487 U.S. 1207, 108 S.Ct. 2851, 101 L. Ed. 2d. 888 (1988); Madrid v. Gomez, 889, F. Supp. 1146, 1270 (N.D. CAL. 1995) [10]

The "Sandin" decision worked a fundamental change in

[10] Also see; Mims v. Shapp, 744 F. 2d. 946 (3d. cir. 1984); Sheley v. Dugger, 833 F. 2d. 1420 (11th cir. 1987); Perez v. Neubert, 611 F. Supp. 830 ( D.N.J. 1985); Kremer v. Carlson, 685 F. Supp. 1335 (M.D. Pa. 1988).



... determine whether an inmate possesses a
protected liberty interest specifically "Sandin"
permissive analysis. Hewitt v.
... 1021-22 103 S. Ct. 864, 74 L. Ed. 2d. 675
... on the nature of
STS USi at 481, 115

the way the courts determine whether an inmate possesses a constitutional protected liberty interest, specifically, "Sandin" abandoned the mandatory/permissive analysis of Hewitt v. Helms, 459 U.S. 460, 971-73 S.ct. 864, 74 L.ed. 2d 675 (1983). In favor of an inquiry focusing on the nature of deprivation suffered by the inmate (Sandin, SIS U.S. at 481, 115 S. ct. 2293);

"Sandin .... refocused the test for determining the existence of a liberty interest away from the wording of prisons regulations and towards an examination of the hardships caused by the prisons challenged action relative to the basic conditions of life as a prisoner." (Mitchell v. Dupnik, 75 f. 3d. 517, 522 (9th cir. 1996).

Thus, after "Sandin," a state-created liberty interest arises when the prisons conduct toward the inmate(s) impose an "Atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (Sandin, SIS U.S. at 481, 115 S.ct. 2293)"

[1] In addition to state-created rights, The due process clause can give rise to a liberty interest of its own face. (Sandin, SIS u.s. at 484, 115 S. ct. 2293). This protection generally is reserved for the "most severe deprivations of liberty, those exceeding sentences in an unexpected Manner;

Plaintiff has well established that his Indeterminate confinement in (SHU) is "Atypical and Significant", And that his retention has exceeded [ANY] sentence, in an Unexpected manner and may well qualify as the Sort of extreme deprevation that would give rise to a Liberty Interest from the Due Process clause Itself. (Koch v. Lewis, 216 F. Supp. 2d. 999, F.N. 6; 1002-1003). Plaintiff must prevail on This claim.

# III

## THE INDETERMINATE SEGREGATION OF PLAINTIFF IN (SHU), BASED ON A "PREDICTIVE THEORY, VIOLATES ALL BASIC PRINCIPLES OF DUE PROCESS.

Under the severe conditions Plaintiff has asserted here in, other Courts have found that this type of deprevation is severe enough to engage the due process clause (Koch v. Lewis, 216 F. Supp. 2d. 1002-1003)[2]

The Due Process clause of the 14th Amendment provides

[2] the constitutional Provision that prohibits the government from Unfairly or arbitrarily depriving a person of Life, Liberty, or property.

Inmate(s) with two (2) types of Safeguards; The first is procedural protections. Generally, adequate notice, an opportunity to be heard, and periodic review; (Wolf v. McDonnell, 418 U.S. 539-70, 94 S. Ct. 2963, 41 L. Ed. 2d. 935 (1974); Toussaint v. McCarthy, 801 F. 2d. 1080, 1100 (9th Cir. 1986), cert. denied, 481 U.S. 1069, 107 S. Ct. 2462, 95 L. Ed. 2d. 871 (1987)). The Second type of Safeguard consist of evidentiary protections. Prison officials can not deprive an inmate of a Constitutional Protected liberty interest absent a sufficient evidentiary basis. The Supreme Court has held that, at the very least, there must be "Some evidence in the record", Supporting the decision to segregate an inmate; (Superintendant v. Hill, 472 U.S. 445, 454, 105 S. Ct. 2768, 86 L. Ed. 2d. 356 (1985)); The evidence relied upon must have "Some indicia of reliability"; (Cato v. Rushon, 824 F. 2d. 703, 705 (9th Cir. 1987)), these evidentiary Protections operate "To prevent arbitrary deprevations without imposing Under administrative burdens"; (Hill, 472 U.S. at 445, 105 S. Ct. 2768).

In the instant matter, there are no clear guidelines as to what Due Process or procedures an inmate placed or retained in (SHU) Segregation, for an indeterminate term based solely on Confidential Information (CDC-1030) forms; And 128-B Chronos, Surmised only, on part of Pelican Bay State Prison Staff placating the institutions non-existant rules, which in fact

were clearly outlined, and federally articulated in the Castillo
v. Alameida JR, case No. c-94-2847-MJJ-JCS, settlement
agreement.

Under the two (2) protections of Due Process mentioned,
Procedural and evidentiary, "Neither Apply", nor are they
sufficient in the instant, or those instances as herein.
Plaintiff had once already been put into jeopardy for [supposed]
past conduct, and is now being twice put into jeopardy on the
same [supposed] information, that can not, and/or no longer
be admissable, per Castillo v. Alameida JR, (case No. c-94-2847-
MJJ-JCS) settlement agreement, both procedural and evidenciary
due process are useless to the instant and circumstances of
Plaintiffs' retention in (SHU) segregation on the part of [supposed]
Gang Affiliation, even if applied to the instant, they would
provide no protections, relief, or prevent arbitrary deprevations;
Plaintiff can not fairly or adequately provide a defense, provide
mitigating circumstances or defend himself against the
"predictive theories", or "possibilities", that the prison has used to
justify Plaintiffs continued retention in (SHU) segregation for
an indeterminate term.[3] This is a violation of his due process; (see

[3] [A]ttempting to use predictive criteria based on subjective information
has led "Historically to unsatisfactory and possibly indefensible results";
"Segregation should be based soley on actual behavior"; (A re-examination
of Procedural Protected and a proposal for greater Procedural Requirements, 83
cal. L. Rev. 1115, 1135-46 (1995); Supermax Prisons; An Overview and General
Considerations, U.S. Dep. of Justice, National Inst. of Corrections (January, 1999).

(39)

: Attached Exhibits " A-F").

The nature of the deprevation is the Paramount consideration in the Due Process analysis, critically relevant at both the Liberty and Process stages of the inquiry. "Sandin" was an attempt to return to basic Due Process principles which stress proportionality, and a balancing of the interest; involved more process, is due where the deprevation is greatest"; ( Kuch, 96 f. supp. 2d. at 964-65 (footnote admitted)). This is in Keeping with "Sandin", and return to the principles of "WOLFF", and it's intricate balancing of Prison management concern's with Prison's Liberty in determining the account of due process"); (Hill, 472 u.s. at 454, 105 s.ct. 2768 ("The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action")

As Plaintiff has set forth, his indefinite and likely permanent confinement, in solitary confinement (SHU) is one of the most severe deprevations of Liberty that, can be inflicted upon an inmate within the department of Corrections, if not the most severe. Given the extreme nature of deprevation in the instant matter, there is a clear violation of Plaintiff's Liberty interest, Due Process, and other constitutional guarenties stated herein. Those violations become much more severe in the instant where Plaintiff has done nothing wrong, broken no prison rules; And his placement in (SHU) for an indeterminate is not based on actual conduct, but rather unmittigated harshness

of Pelican Bay State Prison Staff, whom only want to meet their "Quota"; And without making the truth apparent. This type of indeterminate Segregation endured and inflicted upon Plaintiff, requires more than a feeling, belief, or "Predictive theory".

Due Process is a flexible Concept that balances the need to avoid arbitrary deprevations of Liberty against the interest of differential Prison administration. (Hill, 472 U.S. at 454-55, 105 S.Ct. 2768). Here, Plaintiff is enduring and will continue to endure an extreme form of Liberty deprivation, the federal Protected Due Process Clause requires more than just a "predictive theory" in which the institution justifies the Continued Segregation of Plaintiff, thus, offending the Due Process clause. Plaintiff must prevail in this claim.

# IV

THE CONTINUED CONFINEMENT OF PLAINTIFF
IN SEGREGATION ON AN INDETERMINANT
SHU-TERM BASED SOLEY ON [SUPPOSED]
GANG INFORMATION, FRIVILOUS AND/OR
PREDICTIVE THEORIES VIOLATES THE
STATE AND FEDERAL PROTECTION'S AGAINST
DOUBLE JEOPARDY.

AS ASSERTED herein, Plaintiff is being retained in Segregation

(41)

for an indeterminate term based soley on his [supposed] gang affiliation in which, is nothing more but "heresay" information that can not be proven in a court of law; for this institution's punishing Plaintiff on insufficient evidence, relied upon by information that can no longer be used and/or held against inmate(s) (per: <u>Castillo v. Alameida JR., case no. c-94-2847-mJJ-JCS</u> -; (settlement agreement)).

The institution is using [supposed] prior information as aggravating circumstances to, prolong Plaintiffs' indeterminate SHU term or in that nature. In fact, the institution is using Plaintiffs' past information [supposed], combined as an actual violation of some underground policy which does not comport with the Administrative Procedure Act.

Plaintiffs' [supposed] prior information used against him to [supposedly] validate him may be only used for a some what reference, if need be; if its repetetive, the repetetive rationale has long provided a basis upon which to uphold recidivist sentences schemes against Double Jeopardy challenges; It is not, however, simply a wild card that renders [Any] penalty constitutional, however severe it's term's and however minor the principle. Rather, given the structures of the Double Jeopardy Clause, recidivism may only be considered in the conducatory phase of the extent that it serves to aggravate the principle information. Thus, this rule has been established for more than

a century; (Moore v. Missouri, 159 U.S. 673, 677 (1895), And it
has been reiterated in the Supreme Court's Contemporary
Jurisprudence concerning gross disproportionality challenges; (see:
Solem v. Helm, 463 U.S. 277, 296, and 21 (1983)).

A recidivism enhancement cannot be treated as an
independent source, or an element of the information without
running afoul of the Double Jeopardy Clause; (see: Almendarez
Torres v. U.S., 523 U.S. 224, 247 (1998)).

The Double Jeopardy Clause of the fifth (5th) Amendment
of the United States Constitution, States;

> "... Nor shall any person be subject for
> the same offense / informational source to
> be twice put on Jeopardy of life or limb."

Thus, protecting [ALL] persons from being tried or
punished for the same issue. The Double Jeopardy
Clause was defined by the Supreme Court as three (3) seperate
Constitutional protections;

> "... It protects against a second prosecution
> for the same offense after aquittal; It protects
> against a second prosecution for the same
> offense after either a Conviction or Substantial
> evidence; And it protects against multiple

punishment for the same issue. . ." (North Carolina v. Pearce, 395 U.S. 711 (1969)).

The fifth amendment's bar to Double Jeopardy is applied to States in their proceedings by virtue of the fourteenth amendment; (Benton v. Maryland, 395 U.S. 784, 795, 796, 89 S.Ct. 2056, 23 L. Ed. 2d. 707; Richard M. v. Superior Court, 4 Cal. 3d. 370, 375, 93 Cal. Rptr 752, 482 P. 2d. 664.) Article I, Section 13 of the California Constitution contains almost precisely the same guarantee against Double Jeopardy in that it provides;

" . . . No person shall be twice put in Jeopardy for the same offense . . ." (Gomez v. Superior Court, So. Cal. 2d. 640, 649, 398 P. 2d. 976, 978.)

California by statute has further expanded upon the protectional guarentee by the Federal and State Constitutions as follows;

California Penal Code § 687 provides;[3]

" . . . . No person shall be subjected to a

[3] All Penal Codes herein are California Penal Code (CPC).

(44)

second prosecution for a public [or institutional] offense for which he has once been prosecuted and convicted or aquitted..."

Penal Code § 1023 provides;

"... When the defendant is convicted or aquitted, or has once been in Jeopardy upon an accusatory pleading, the conviction, aquittal, or Jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading..."

Penal code § 654 provides

".... An act or omission which is made punishable in different way's, by different provisions of this code, may be punished under either of such provisions; but in no case can it be punished under more than one; An aquittal or conviction and sentence

Under either one bars a prosecution
for the same act or omission under
[Any] others..."

The purpose of the Double Jeopardy defense is to prevent repeated harassment of the defendant upon a charge or allegation of the same offense; (Ryan v. Superior Court, for Cal. 3d. 575, 581, 102 Cal. Rptr. 831, 498 P. 2d. 1079; U.S. v. Dixon (1993) 509 U.S. 688, 125 L. Ed. 2d. 556, 113 S.Ct. 2849; U.S. v. Brookler (9th Cir. 1981) 637 F. 2d. 620); The fundamental nature of the guarentee against Double Jeopardy can hardly be doubted, it's origins can be traced back to Greek and Roman times; It became established in the Law of England before this Nations Independance.[141]

As with many other elements of the Law, it was carried into the Jurisprudence of this Country through the medium of Blackstone, who codified the doctrine in his commentaries;

"... [T]he plea of autrefoits aquit, or a former aquittal", He wrote "... IS grounded on this universe maxim of the common Law of England, that no man

---

[141] J. Singler, Double Jeopardy 1-37 (1969); See: BARTKUS V. ILLINOIS, 359 U.S. 121, 151-155, 79 S.Ct. 676, 697, 3 L.Ed. 2d. 684 (1959).

is to be brought into Jeopardy of his life
more than once for the same offense..."
(4 W. Blackstone, Commentaries + 335.)

The indeterminate SHU segregation sentence at issue is
the most severe punishment and deprevation implimented by
California Department of Corrections And Rehabilitations, and is
exacerbated by the fact that Plaintiff did not commit [Any]
new rules violations or acts of misconduct. Plaintiffs [supposed]
prior activity can not justify the extreme punishment now
inflicted upon his person without breaching the boundaries imposed
by the Double Jeopardy Clause, And other Constitutional guarenties.

Today, every state incorporates some form of the
prohibition in it's Constitution or Common Law; This prohibition
represents a fundamental ideal in our constitutional Heritage.

Thus, the validity of Plaintiffs' indeterminate segregation
in (SHU), must be judged by the Court's interpretation of the
fifth amendments Double Jeopardy provisions applicable to the
States through the fourteenth amendment and this states
own provisions.

It is clear that, Plaintiffs' illegal indeterminate
segregation in (SHU), should not stand once Federal and State
Double Jeopardy standards are applied, and Plaintiff should
prevail on this claim.

(47)

# Conclusion

For the above stated reasons, this court should conduct a review of the legality of Plaintiffs' indeterminate Segregation and determine Plaintiffs' assertions herein; And find that Plaintiffs' Judicial questions are valid. Therefore, the relief sought in this Petition, should be granted.

Dated: 2-5-08 , 2008

Respectfully Submitted
/S/
Cody Rosbrugh / J81708

IN PRO PER

EXIBITS "A-F"

EXIBIT "A"

Memorandum

Date: August 26th, 2002

TO: Wardens

    Classification's and Parole Representatives

    Classification Staff Representatives

    Correctional Counselor III's/Reception Centers

Subject: INDETERMINATE SECURITY HOUSING UNIT STATUS FOR DISRUPTIVE INMATE(S)

The purpose for this memorandum is to provide institutional Staff with direction relevant to the review and program consideration of inmate(s) who complete a determinate Security Housing Unit (SHU) term and continue to pose a threat to the safety of others, or security of the institution. This perceived threat may be based on the inmates behavior while in SHU housing or due to the inmate(s) disciplinary history while housed in the CDC. Due to escalating violence occurring within the institutions, Administrative Staff encourged to review for appropriate housing those inmate(s) who have a history of participating in disruptive behavior, or fomenting violence and unrest.

This direction is appropriate and within the parameters of the California Code of Regulations (CCR), title 15, Section 83341.5(c), which states: "An inmate whose conduct endanger's the safety of other's or the security of the institution shall be housed in a SHU."

(1)

Effective immediately, during the pre-minimum eligable release date review, Classification Staff shall consider indeterminate (SHU) Status for inmate(s) whom have demonstrated the desire to be disruptive and endanger the safety of others or the security of the institution. The following are examples of inmate(s) who may qualify for Consideration of indeterminate (SHU) Status;

1.) Inmate(s) currently serving a determinate SHU Term whose in-custody behavior reflects a propensity towards disruptive conduct, regardless of whether the inmate is not eligable for additional determinate (SHU) term assessment.

2.) Specifically, inmate(s) who have been assessed three (3) determinate (SHU) term's for any offense or assessed two (2) determinate (SHU) term's for participating in a riot, melee, or disturbance. This requirement shall be subject to ALL SHU term's assessed on the same prison identification number indifferent to the inmate(s) term status; e.g., " P.U.R.T.C", "P.M.W.N.T", etc...

Wardens
Classification and Parole Representatives
Classification Staff Representatives
Correctional Counselor III's/Reception Center(s)
Page *2

This directive does not negate institution staff's
responsibility to properly identify and process inmate(s) suspected
of prison gang membership or association.

If you have any questions or require additional information,
Please contact "Marilyn Kalvelage", chief, Institution Operations,
Institutions division, at (916) 323-4108; Or for technical information,
Contact "Linda Rianda", chief, Classification Services Unit, at (916)
322-2544.

W.A. Duncan
Deputy Director
INSTITUTIONS DIVISION.

CC: Jane Sale
   Merrie M. Koshell
   Jim L'ETOILE
   E.A. Mitchell
   Patrick Q. Hickman

CC: Edward S. Alameida Jr.     Yvette M. Page.
   David Tristan              Karl Kerkseick
   Michael T. Pickett         Linda Rianda
   E. Roe                     Ernest C. Van Sant
   Anna Ramirez-Palmer        R. Manuel
   K.W. Prunty                Gloria Rea
   Judy Buckham               Carlos Sanchez
   Wendy Still                Paul Bestolarides
   Gregory W. Harding         Ombudsmans office (7)

(3)

EXIBIT "B"

DISPUTE
128-B
6/10

# PELICAN BAY STATE PRISON
## INMATE/PAROLEE HOUSING UNIT APPEAL FORM
### UNIT D-1
CDC 602 (12/87)

Location: Institution/Parole Region
1. PBSP
2. _____

Log No. D07-01668

Category 6/10

1. _____
2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| RosBRuan | J-81708 | | D-1-213 |

A. Describe Problem: ON JULY 9.07 I RECEIVED A "128-B GANG CHRONO" IN WHICH IT STATED THAT ON JULY 3.07 IGI C/O C. COUNTESS CONDUCTED A CELL SEARCH OF I/M HERRING (#K-08284) AND IN SEARCHING THIS § CELL DISCOVERED AN ADDRESS IN HIS (HERRING'S) Phone Book.

THIS "Phone Book" HAD THE HOME ADDRESS OF MY GRANDMOTHER WHO IS DYING OF BONE CANCER AND HAS BEEN SERIOUSLY ILL FOR SEVERAL YEARS. C/O COUNTESS TAKES THE FINDING OF THIS ADDRESS AND CREATES SOMETHING OUT OF NOTHING. SUGGESTING THAT THIS ADDRESS IS FOR "SUPPOSED" THIRD PARTY

If you need more space, attach one additional sheet.

B. Action Requested: FOR THIS 128-b TO BE STRICKEN FROM MY CENTRAL FILE AND NOT USED AGAINST ME AS A SINGLE DOCUMENT NOW, NOR IN THE FUTURE, AND FOR THE RULES AND REGULATIONS BE KNOWN & UNDERSTOOD BY ALL WHO USE THEM.

Inmate/Parolee Signature: Cal Ros Q                Date Submitted: 7-12-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

INMATE APPEALS BRANCH
SEP 26 2007
RECEIVED

Staff Signature: _____                Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I'M DISSATISFIED AND REQUEST THIS 128-b BE REMOVED FROM MY FILE ON THE BASIS THAT IT IS UNFOUNDED AND ~~correct~~ FOR THE REASONS LISTED ABOVE.

BYPASS

Signature: Cp Ro Q                Date Submitted: 7-18-07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

JUL 17 2007   JUL 20 2007   ~~JUL 3 0 2007~~   JUL 3 0 2007
10           10            2ND IGI
                          (PER IAB)

(1)  EXHIBIT "B"

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

**BYPASS**

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

**BYPASS**

Signature: _____ Date Submitted: _____

Second Level ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 7/30/07    Due Date: 9/11/07

☐ See Attached Letter    K. Brandon Cpt.

Signature: _____ Date Completed: 8/1/2007

Warden/Superintendent Signature: _____ Date Returned to Inmate: 9-12-07

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

DISSATISFIED. THIS 128 B IS SUPPOSITION NOT BASED ON FACT BUT ACTUAL A STORY INVENTED BY IGI C/O CANTESS. THIS DOES ADVERSELY AFFECT ME BECAUSE IT IS FALSE INFORMATION IN MY FILE AND I WANT IT REMOVED. I'M FURTHER DISSATISFIED BASED ON COLUMN'S STATED IN "A" I APPEAL. IGI OFFICALS CANNOT FIND OR ADDRESS AND MAKE UP ELABORATE STORIES TO KEEP INMATES IN SHU ON ACTIVE GANG STATUS. WHERE IS THE PROOF OF 3 WAY MAIL? THERE IS NONE. THIS IS FALSE INFO WITH THE SOLE PURPOSE OF BEING USED AGAINST ME AND IN THE FUTURE.

Signature: _____ Date Submitted: 9-21-07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other _____
☒ See Attached Letter

CDC 602 (12/87)    Date: DEC 1 8 2007

② exh B

EXH. "B"

continued "A. Statement of facts.

MAIL DROP, "GANG ACTIVITY" AND A "DIRECT LINK." WITH NO
EVIDENCE TO SUPPORT HIS/HER CLAIM OF "SUPPOSED" GANG
ACTIVITY, ASSOCIATION. SUCH AS "THIRD PARTY LETTERS AND
COMMUNICATIONS"

C/O C. COUNTESS THEN SUGGEST SIMPLY ON THE BASIS OF FINDING
THIS "ADDRESS (NO COMMUNICATION NOR PROOF AT ALL OF ASSOCIATION
NOR GANG ACTIVITY) THAT IT SHOULD BE USED AS A SOURCE
DOCUMENT FOR BOTH MY VALIDATION AS WELL AS THE HEARING.

According to the facts.

(A) UNDER CASTILLO V. GOMEZ / CASTILLO V ALAMEIDA. SETTLEMENT,
(ADDRESSES IN ADDRESS BOOKS OF INDIVIDUALS "SUPPOSEDLY" GANG
MEMBERS OR ASSOCIATES CANNOT BE USED FOR VALIDATION.
NOR BIRTHDAYS CARDS. LETTERS ETC.) AS THEY DON'T DEMONSTRATE
SPECIFIC ACTS, DATES, TIMES OF ▆ ALLEGED GANG ACTIVITY.

(B) TITLE 15 3378 (C) STATES THAT ANY SOURCE ITEMS BE DISCLOSED
TO INMATE. WHICH. THE 128-B WAS GIVEN. ALTHOUGH UNDER
IN-VALID CIRCUMSTANCES. AND IS BEING INAPPROPRIATELY USED.

(i) THERE IS NO PROOF THIS ADDRESS IS BEING USED FOR 3RD PARTY
MAIL DROP. NOR PROOF OF ANY COMMUNICATION PERIOD.

(ii) THIS ADDRESS IS THE HOME ADDRESS OF MY DYING GRAND MOTHER.
WHO NEVER HAS NOR WOULD PARTICIPATE IN SUPPOSED THIRD
PARTY MAIL.

(iii) PER CASTILLO SETTLEMENT "ADDRESSES" CANNOT AND WILL NOT
BE USED AS SOURCE DOCUMENTS IN THAT THEY DON'T DEMONSTRATE
SPECIFIC ACTS, DATES, TIMES. AREAS OF ALLEGED GANG ACTIVITY.
SUCH AS "THIRD PARTY LETTERS. AND OR COMMUNICATIONS." THEREFORE
MAKING THIS 128-B IN-ADMISSABLE AS EVIDENCE. AND ▆ SHOULD

over →

Department of Corrections and Rehabilitation
CDC Form 695

## INMATE/PAROLEE APPEALS SCREENING FORM

Name: **ROSBRUGH**     Number: **J81708**     Housing: **D1 213**

### YOUR APPEAL IS BEING REJECTED/CANCELLED AND RETURNED FOR THE FOLLOWING:

Screening Appeals Rejection Criteria:

[ ] 1.   The resolution is not within CDC's jurisdiction. See CCR, Title 15, Sections 3084.2(e) and 3084.3(c)(1).

[ ] 2.   The appeal duplicates the inmates previous appeal. See CCR, Title 15, Section 3084.3(c)(2).
    [ ] (a) Your appeal has been screened out on _____ for _____
    [ ] (b) Your appeal is being reviewed at the _____ Level, Log # _____
    [ ] (c) Your appeal has been completed out at the _____ Level, Log # _____

[X] 3.   The appeal concerns an anticipated action or decision. See CCR, Title 15, Section 3084.3(c)(3).

[ ] 6.   The appeal exceeds the 15 working days time limit, and the inmate has failed to offer a credible explanation as to why he could/did not submit the appeal within the time limit. See CCR, Title 15, Sections 3084.2(c), 3084.3(c)(6), and 3084.6(c).

[ ] 8.   Abuse of the Appeal Process/Right to Appeal.
    [ ] (a) Excessive filings. Submission of more than one non-emergency appeal within a seven-calendar-day period is excessive. See CCR, Title 15, Section 3084.4(a).
    [ ] (b) Inappropriate statements. The Appeal contains false information, profanity, or obscene language. The appeal is rejected. See CCR, Title 15, Section 3084.4(b).
    [ ] (c) Excessive verbiage. Appeal cannot be understood or is obscured by pointless verbiage or voluminous, unrelated documentation. See CCR, Title 15, Section 3084.4(c).
        [ ] (1)  Only allowed 1 added page, front and back, to describe the problem and action requested in Sections A and B, per CCR, Title 15, Section 3084.2(a)(1).
        [ ] (2)  Only supporting documentation necessary to clarify appeal shall be attached to the appeal, per CCR, Title 15, Section 3084.2(a)(2).
    [ ] (d) Lack of cooperation. Appellant refused to cooperate and/or interview with the reviewer which has resulted in the cancellation of the appeal, per CCR, Title 15, Section 3084.4(d).
        [ ] (1)  Your appeal was screened out and returned to you with instructions:
        [ ]_____[ ]_____[ ]_____
    [ ] (e) Failed to reasonably demonstrate the decision, action, policy, or condition as having an adverse affect upon the inmate's welfare, per CCR, Title 15, Section 3084.1(a).
    [ ] (f) This is a request for information. It is not an appeal. Write a note (GA-22, Request For Interview form or CDC-7362, Medical Request form).

[ ] 9.   Cannot appeal on behalf of another inmate/person. See CCR, Title 15, Sections 3084.2(d) and 3084.3(c)(7).

[ ] 10.  Issue resolved at previous level of Appeal review. See CCR, Title 15, Sections 3084.3(c)(8) and 3084.4(d).

Comments: YOUR APPEAL IS AN ANTICIPATED ACTION AT THIS POINT. 128-B IS SIMPLY STAFF OBSERVATIONS AS DOCUMENTED AND NOT SUBJECT TO APPEAL UNTIL SUCH TIME AS AN ACTION IS TAKEN.

_C. Wilber_     JUL 18 2007     **PELICAN BAY STATE PRISON**
C. E. WILBER          Date   JUL 24 2007     **SECURITY HOUSING UNIT**
Appeals Coordinator                             **UNIT D-1**

Reviewed 7-20-07

This screening decision may not be appealed unless you can support an argument that the above is inaccurate. In such a case, please return this form to the Appeals Office with the necessary supporting information.

### PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

PBSP     (Rev.  11/06)     CCR 3084.3(d)     PBSP

JUL 17 2007     JUL 20 2007



**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

PBSP

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1

Log No.                Category

1.
2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME RosBRugh | NUMBER J-81708 | ASSIGNMENT | UNIT/ROOM NUMBER D-1-213 |

A. Describe Problem: On July 18th, 2007 I Received my Inmate appeal form/ 602 back from the appeals coordinator C.E. Wilber along with an appeals screening form based on C.E. Wilbers belief's That my 602) appeal concerns were on anticipated action and/or decision.

On July 24th 2007 again C.E. Wilber returned my 602) appeal with the same Response given previously. That my appeal is not subject to appeal a an anticipated action. State a federal laws are clear in That Inmates are & will be allowed to appeal any and all Information

If you need more space, attach one additional sheet.

B. Action Requested: To have my appeal, dated on 7-12-07, concerning the matter of a (CDC 128-B) chrono, dated July 3rd, 2007, be accessed and processed with an appeals log number, so that I can further my appeal.

Inmate/Parolee Signature: _____        Date Submitted: 7-27-07

C. INFORMAL LEVEL (Date Received: JUL 30 2007       )

Staff Response: GRANTED. YOUR APPEAL REGARDING 128-B 7-6-07) HAS BEEN ASSIGNED TO THE FORMAL LEVEL OF REVIEW PER LATEST DIRECTION FROM THE INMATE APPEALS BRANCH.

C. WILBER

Staff Signature: _____        Date Returned to Inmate: 7-31-07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____
_____
_____
_____

Signature: _____        Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

EXH. 'B'

*(H)*

STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

---

**NAME: ROSBRUGH, Cody**      *CDC # J-81708*      CDC 128-B (REV. 4/74)

On July 3, 2007, while assigned to the Institutional Gangs Investigation (IGI) Unit, I searched the property of inmate Michael **HERRING**, K-08284, a.k.a. "Skunky", validated member of the Nazi Low Rider (NLR) prison gang, currently housed in the Security Housing Unit (SHU), Facility D, Unit 2, Cell 217L. During the course of the search I discovered the following item in HERRING'S property relative to NLR gang activity.

- One piece of paper containing addresses. On the paper HERRING has the name "Rhino" with lighting bolts on each side of the name. Below that HERRING had the name of Cody **ROSBRUGH**, J-81708, (validated member of the NLR prison gang, currently housed in SHU) with an address of "*8363 Malachite Ave, Rancho Cucamonga, Ca. 91730*". Third party mail drops are essential for prison gang communication. Prison gangs, specifically the NLR, utilize third party mail to disseminate orders regarding drugs, assaults, and money. Non-approved mail communication between the inmates requires a third-party mail drop. The third party consists of someone in the community willing to receive messages on behalf of one inmate and forward the communication to the other inmate. The lightning bolts which bracketed inmate ROSBRUGH'S name are significant in that they represent the symbol utilized by the Nazi Schutzstaffel (SS) who were specially selected elite soldiers in Nazi Germany. It is apparent when used in this context that HERRING considers inmate ROSBRUGH to be an elite warrior. It is also significant in that ROSBRUGH'S name was the only name which contained this designation.

HERRING having the name and state identification number along with the third party address of another validated NLR member indicates that HERRING is demonstrating continued participation in the NLR prison gang. With HERRING having the mentioned address for ROSBRUGH provides a direct link from a validated NLR member to another validated NLR member. There is an ongoing investigation to determine the scope of NLR activities at PBSP. This document meets the criteria set forth in California Code of Regulation CCR, Title 15, section 3378 (c), (8), (G), Association. This document should also be considered a source document in the validation of HERRING and ROSBRUGH as members of the NLR prison gang.



C. COUNTESS
Correctional Officer
Institution Gang Investigations
Pelican Bay State Prison

**DATE: July 6, 2007**        *GANG CHRONO*        *CDC 128B*





continuation. A.                                    Exhibit "B"

concerning any Inmates validation status. whether it be
Deemed ("Staff observation, view point, etc...) or to it
Being an observation on a 128-B Form from I.G.I
while with as long as its Not when a "formal" Document
(such as a 128-B chrono) and Not of Placed into ANY
Inmates Central File (c-file) it is Automatically Subject
to Appeal.

(9) Exhibit "B"

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE: **SEP 0 4 2007**

Inmate: ROSBRUGH, J81708
Pelican Bay State Prison
Security Housing Unit
Facility D1-213

RE:  WARDEN'S LEVEL DECISION          APPEAL:  **DENIED**
     APPEAL LOG NO. PBSP-D-07-01668    ISSUE:   CASE INFO/RECORDS

This matter was reviewed by Robert A. Horel, Warden, at Pelican Bay State Prison (PBSP).

All submitted documentation and supporting arguments have been considered, including the interview conducted at the Second Level of Review. Additionally, a thorough investigation has been conducted into the claim presented by the inmate and the documentation evaluated in accordance with PBSP's institutional procedures and the California Department of Corrections and Rehabilitation (CDCR) policies.

ISSUES

In Section A of the Appeal Form, inmate ROSBRUGH takes issue with a CDC 128B dated July 6, 2007, authored by Correctional Officer C. Countess. Inmate ROSBRUGH asserted that this document did not meet the criteria for validation requirements as agreed to in the Castillo v. Alameida settlement.

Inmate ROSBRUGH requested for the CDC 128B be stricken from his Central File and never be used against him.

The Informal Level, Formal Level, and First Level were bypassed in this Appeal.

FINDINGS

I

Sergeant D. Barneburg reviewed this matter and determined that this Appeal did not meet the criteria set forth in California Code of Regulations (CCR), Title 15, Section 3084.1, which states in part; *"(a) Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."*

In this instance, inmate ROSBRUGH is appealing the placement of a CDC 128B in his Central File, requesting that it never be used against him in the future. ROSBRUGH has failed to demonstrate the placement of this chrono in his file as having an adverse effect, only that it may affect him in the future. In addition to the anticipated action, ROSBRUGH fails to demonstrate how this CDC 128B adversely effects his welfare. This CDC 128B Gang Chrono is not a decision, action, condition, or policy, therefore, clearly does not meet the criteria set forth under CCR, Title 15, Section 3084.1.

Second Level Reviewer's Response
Appeal Log #: PBSP-D-07-01668
Inmate ROSBRUGH, J81708
Page 2

 ⑩ Exhibit "B"

ROSBRUGH stated that the chrono does not meet the validation requirements agreed to in the Castillo versus Alameida settlement.   Sergeant Barneburg reviewed the CDC 128B Gang Chrono and determined it met the validation requirements established in California Code of Regulations (CCR) Title 15, Section 3378 and the Castillo versus Alameida settlement.  However, as this document was not used in inmate ROSBRUGH's most recent inactive review, this argument is irrelevant.

## DETERMINATION OF ISSUE

This Appeal is DENIED at the Second Level of review as inmate ROSBRUGH cannot demonstrate an adverse effect upon his welfare due to the inclusion of this CDC 128B in his Central File.  Therefore, inmate ROSBRUGH's request to have the CDC 128B removed from his Central File is DENIED.

## MODIFICATION ORDER

No modification of this decision or action is required.

ROBERT A. HOREL
Warden

⑩ EXHIBIT "B"

(B) Exhibit B

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:  DEC 1 8 2007

In re:  Cody Rosbrugh, J81708
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0709459        Local Log No.: PBSP-07-01668

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Stocker, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I  APPELLANT'S ARGUMENT:** It is the appellant's position that a CDC Form 128-B, General Chrono dated July 6, 2007, characterized as a "gang chrono," identifies Inmate Herrin, K-08284, a validated member of the Nazi Low Rider prison gang, as having in his personal address book the name and address of the appellant's grandmother. The author asserts that the address is present to afford the use of the address as a drop for third party mailings to the appellant for gang communication. The author reports that the chrono should be used as a source document for a future gang validation. He requests removal of the document from his central file and restriction of its use in future gang validations.

**II  SECOND LEVEL'S DECISION:** The reviewer found that the appellant has not demonstrated an adverse effect of the chrono and his request to not use it in future gang validation documents is speculative of a future action, neither of which are subject to appeal. The second level response notes that the chrono satisfies regulations and the Castillo court settlement to be used as a source document in a potential gang validation.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.  FINDINGS:** The CDC 128-B of concern was examined at the Director's Level of Review. The author reports the finding of the appellant's nickname, "Rhino," along with lightning bolts beside the appellant's grandmother's address. The appellant is a validated member of the Nazi Low Rider prison gang. The author's reported observations are fact-based and import sound correctional experience and judgment in concluding that the address is likely used to conduct unauthorized communication between gang members in a third-party mail transfer. The chrono is fully consistent with existing regulation and policy and there is no need to modify or remove the chrono from the central file. Future use of the chrono in a gang validation is not subject to appeal at this time; however, the appellant can appeal the use if and when it is used to support such action.

**B.  BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section: 3084.1, 3084.3, 3378
CDC Operations Manual Section: 13030.10, 72010.7.2

**C.  ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
Appeals Coordinator, PBSP

(11) Exhibit "B"

EXIBIT C

RECEIVED 2
1030'S

# PELICAN BAY STATE PRISON
## SECURITY HOUSING UNIT
### UNIT D-1

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

PBSP

| Location: Institution/Parole Region | Log No. | Category |
|---|---|---|
| 1. | 1. | 6/8 |
| 2. | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| RosBRugH | J-81708 | | D-1-213 |

**A. Describe Problem:** On FRIDAY AUG-3RD, 2007 I.G.I c/o BuchANAN came to MY cell Door AND HANDED me 2 CDC 1030 (confidential info forms) The 1st 1030 form DATED MAY 22ND. 2006 STATED THAT I (supposedly) provided (supposed) information Regarding ARYAN BROTHERHOOD Politics, AND of Providing Instruction on Acts (supposedly) To Be Accomplished. It ALSO STATES THAT THIS "source's" Reliability was based on (1) THIS source has previously given confidential info which has Proven to Be True. (2) more Than one source independently provided The same information. (3) THIS source incriminated himself/herself in a criminal activity at The Time of Providing

If you need more space, attach one additional sheet.

**B. Action Requested:** To Be given "IN-Active" Status. To have These 2 (1030 forms) Be solicked from my files as They Do NOT State Specific Acts, Dates, Times, Places of "Allowed" Gang activity. I Further Request under The Freedom of information act" any and All Documents Pertaining to my validation and of active/inactive

Inmate/Parolee Signature: _____ Date Submitted: **8-6-07** continued

**C. INFORMAL LEVEL (Date Received: _____ )**

Staff Response: _____

Staff Signature: _____ Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____ Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

AUG 2 7 2007

10

(1) EXH. "C"

CONTINUE A. (1)

THE INFORMATION. (4) PART OF THE INFO PROVIDED IS CORROBORATED THROUGH INVESTIGATION, OR BY INFO PROVIDED BY NON-CONFIDENTIAL SOURCES.

THE 2ND (CDC 1030) DATED JULY 16, 2004 STIPULATED THAT I (SUPPOSEDLY) IDENTIFIED AS A (SUPPOSED) MEMBER OF N.L.R AND (SUPPOSEDLY) GIVING ORDERS TO OTHER WHITE INMATES. THIS CONFIDENTIAL SOURCE WAS DEEMED RELIABLE BECAUSE PART OF THE INFO PROVIDED IS CORROBORATED THROUGH INVESTIGATION, OR BY INFO PROVIDED BY NON CONFIDENTIAL SOURCES.

NOW TO BRING TO LIGHT UPON WHICH C/O BUCHANAN (IGI) MAY OR MAY NOT BE PRIOR TO.

**+ ACCORDING TO THE FACTS.** PER CASTILLO V. ALAMEIDA SETTLEMENT

(A) PARAGRAPH #21 "NO LAUNDRY LIST" THAT IS WHEN CONFIDENTIAL SOURCES. INCLUDING "DEBRIEFERS" IDENTIFY A PERSONAL AS AN ASSOC./MEMBER BY LISTING NAMES OF I/M'S WITHOUT REFERENCE TO SPECIFIC GANG-RELATED ACTS PERFORMED BY I/M'S SHALL NOT BE RELIED UPON AS A SOURCE ITEM: CONFIDENTIAL SOURCE ITEMS MUST IDENTIFY GANG ACTIVITY/CONDUCT PERFORMED BY THE ALLEGED ASSOC/MEMBER BEFORE SUCH INFO CAN BE CONSIDERED AS A SOURCE ITEM

(B) WHETHER CONFIDENTIAL SOURCE ITEM OR CONFIDENTIAL MEMO IT MUST BE RECORDED BY STAFF/C.O'S AND PROVIDED TO THE I/M'S IN WRITTEN FORM.

(C) ON JUNE 15TH 2006 CCI BARNTS PROVIDED ME WITH A CONFIDENTIAL INFORMATION LISTING FORM (810) AND TO WIT IT STIPULATES THAT ALL "CONFIDENTIAL MEMO'S" MUST BE COVERED PER CASTILLO V. ALAMEIDA: UHCA FORM. THE 1030 DATED MAY 22, 06 WAS NOT RECORDED AND OR DOCUMENTED IT ALL THEREFOR A VIOLATION OF PROCEDURE PER CASTILLO V. ALAMEIDA

(C) CONFIDENTIAL MEMO (1030) DATED 5.22.06 DOES NOT STATE SPECIFIC ACTS, DATES, TIMES NOR LOCATIONS OF "ALLEGED" GANG ACTIVITY. IT DOESN'T STATE ANYTHING OTHER THAN "HEARSAY" (#23) CASTILLO V ALAMEIDA "HEARSAY = CANNOT BE USED AND WILL BE EXPUNGED FROM ANY RECORD: TO WIT "EXCLUSIVE RELIANCE UPON "HEARSAY" FROM CONFIDENTIAL SOURCES [WILL NOT] BE USED AS A SOURCE ITEM FOR VALIDATION.

(D) CONFIDENTIAL MEMO CDC (1030) DATED JULY 16TH, 2004 STIPULATES THAT PART OF THE INFO PROVIDED IS CORROBORATED THROUGH INVESTIGATION OR BY

(2) EXH. "C"

continued A. (2)

Info Provided by non-confidential sources. In confusion would one is it.? ethual way. it cannot be used as a source Item because it is "Hearsay."

(C) confidential memo (1030) Dated July 16, 04 does not state specific acts, Dates, Times, places of alleged gang activity.

(B) information in both (1030 forms) is being inappropriately used Because.

(1) neither provides "specific acts, Dates, Times, places of alleged gang activity.

(2) both 1030 forms are unreliable and "Hearsay."

(3) both 1030 forms state dates of "Debriefers" involved alleged Info. However do not convey dates of alleged gang activity.

(4) (CDC 1030) Dated 5-22-06 was not placed in my "810" confidential listing form. Therefore in-admissible of a violation of procedure.

both (1030 forms) are inadmissible as evidence and De-facto can Light when the validity or validity of IGI staffs findings, or reports not only on me as well as every other inmate who has succumbed to this violation of both eighth (8th) and fourteenth (14th) Amendments. as well as the color of law.

Authorities cited.

8th & 14th Amendments.   Castillo V. Alameda.  color of law.

_____

continued B. Action Requested.

status. As an alleged prison gang member.

I would also like to know if these 2 "Debriefers" were covered and passed "Polygraph examinations." To determine whether or not they are lying.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
**CONFIDENTIAL INFORMATION LISTING**
CDC 810 (Rev. 10/02)

DISTRIBUTION
ORIGINAL - CENTRAL FILE - CONFIDENTIAL FOLDER
CANARY - INMATE/PAROLEE
PINK - INMATE'S ATTORNEY OR OTHER PERSON DESIGNATED TO EXAMINE THE CENTRAL FILE (IF APPLICABLE)

This is to inform the person(s) requesting to examine the Central File of the inmate/parolee noted at the bottom of this form that the below listed document(s) have been classified by the Department of Corrections as confidential for the reasons stated and will not be made available to the person(s) requesting to examine the Central File, except by order of an appropriate court. If there are no confidential documents in the inmate/parolee's Central File, "None" shall be written in the first space under "DATE OF DOCUMENT." Note: This form is only completed or updated by the staff person reviewing the Central File in preparation for *In re Olson* examination of the Central File by the inmate/parolee, his or her attorney, or other designated person.

Letter codes used below to describe why the withheld document is classified as confidential:

(A) The document contains information that, if known to the inmate/parolee or others, would endanger the safety of any person.
(B) The document contains information that would jeopardize the security of the institution.
(C) The document contains specific medical or psychological information that, if known to the inmate/parolee, would be medically or psychologically detrimental to the inmate/parolee.
(D) The document contains information provided and classified confidential by another governmental agency.

## DESCRIPTION OF WITHHELD CONFIDENTIAL DOCUMENT(S)

| DATE OF DOCUMENT | TYPE OF WITHHELD DOCUMENT (i.e., memorandum, letter, CDC 128B, etc.) | REASON FOR CONFIDENTIALITY (write applicable letter code) | DATE DOCUMENT WAS ADDED OR REMOVED FROM THIS LISTING Note: This date must match the date next to the Staff Reviewer's signature | |
|---|---|---|---|---|
| 12-26-95 | Confidential memo | A, B | ☐ Added ☐ Removed | Date: 6-15-06 Date: |
| 2-23-98 | | | ☐ Added ☐ Removed | Date: Date: |
| 3-20-98 | | | ☐ Added ☐ Removed | Date: Date: |
| 5-6-98 | | | ☐ Added ☐ Removed | Date: Date: |
| 6-3-98 | | | ☐ Added ☐ Removed | Date: Date: |
| 6-3-98 | | | ☐ Added ☐ Removed | Date: Date: |
| 11-4-97 | | | ☐ Added ☐ Removed | Date: Date: |
| 12-17-98 | | | ☐ Added ☐ Removed | Date: Date: |
| 6-14-00 | | | ☐ Added ☐ Removed | Date: Date: |
| 8-3-00 | | | ☐ Added ☐ Removed | Date: Date: |
| 8-2-01 | | | ☐ Added ☐ Removed | Date: Date: |
| 2-28-02 | | | ☐ Added ☐ Removed | Date: Date: |

## CERTIFICATION OF CENTRAL FILE REVIEW AND UPDATE OF THIS CONFIDENTIAL INFORMATION LISTING

This is to certify that I have reviewed the Central File of the inmate/parolee noted at the bottom of this form and have authorized the withholding of the above listed documents from examination by the person(s) requesting to review the Central File.

| PRINTED NAME OF STAFF REVIEWER | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| W. Baanta | CCI | W Baanta | 6-15-06 |
| | | | |
| | | | |
| | | | |
| | | | |

| CDC NUMBER | NAME | PAGE |
|---|---|---|
| J81708 | ROSBURGH | 1 OF 2 |

EXHIBIT "C" (4000)

STATE OF CALIFORNIA   *Exhibit "B"*   DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: __J-81708__                    INMATE NAME: __ROSBRUGH__

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) Active/Inactive Review          submitted by, __BUCHANAN, T. S., C.O.__
                                              STAFF NAME, TITLE

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

This information is considered reliable because:

1.) ☒ This source has previously provided confidential information which has proven to be true.

2.) ☒ More than one source independently provided the same information.

3.) ☒ This source incriminated himself/ herself in a criminal activity at the time of providing the information.

4.) ☒ Part of the information provided is corroborated through investigation, or by information provided by non-confidential sources.

5.) ☐ This source participated in and successfully completed a Polygraph examination.

6.) ☐ Other (Explain)

3) Disclosure of information received.

Documented is that **ROSBRUGH** was forwarding information regarding Aryan Brotherhood (AB) politics to another member of the NLR. Along with this information **ROSBRUGH** was also providing instruction on acts required to be accomplished by order of the AB. This activity associated with the AB is significantly related to the NLR as the formation and prison activities of the NLR have been conducted with the approval of the AB. NLR members have been utilized as group for recruitment into the AB. The politics of the NLR regarding the AB have been undecided with many NLR members taking the stance of "FTB" (Fuck the Brand) do to the manipulation of the NLR and arrogant attitudes displayed toward the NLR by AB members. **ROSBRUGH's** assistance with forwarding orders of the AB displays his personal feelings of the AB as been held in high regard

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder).

Confidential Memorandum of 05/22/2006 in the confidential material folder of the Central File.

_____                    August 3, 2007
Gang Investigations Officer.                    DATE DISCLOSED
STAFF SIGNATURE, TITLE
DISTRIBUTION: WHITE ☐☐ Central File; GREEN ☐☐ Inmate; YELLOW ☐☐ Institution Use

STATE OF CALIFORNIA                                              DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

*EXHIBIT CC ¾ poor*

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER:  **J-81708** _____        INMATE NAME:  **ROSBRUGH** _____

1) Use of Confidential Information.

 Information received from a confidential source(s) has been considered in the:

 a)  Active/Inactive Review              submitted by,  __**BUCHANAN, T. S., C.O.**__
                                                            STAFF NAME, TITLE

2) Reliability of Source.

 The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.

 This information is considered reliable because:

 1.) ☐ This source has previously provided confidential information which has proven to be true.

 2.) ☐ More than one source independently provided the same information.

 3.) ☐ This source incriminated himself/ herself in a criminal activity at the time of providing the information.

 4.) ☒ Part of the information provided is corroborated through investigation, or by information provided by non-confidential

 sources.

 5.) ☐ This source participated in and successfully completed a Polygraph examination.

 6.) ☐ Other (Explain)

3) Disclosure of information received.

Documented is that **ROSBRUGH** is identified as a member of the NLR who is giving orders to other white inmates. **ROSBRUGH** is also identified as targeting inmates for assault if they do not comply with these orders.

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder).

 Confidential Memorandum of 07/16/2004 in the confidential material folder of the Central File.

_____, Gang Investigations Officer.          August 3, 2007
       STAFF SIGNATURE, TITLE                                        DATE DISCLOSED

 DISTRIBUTION: WHITE ☐☐ Central File; GREEN ☐☐ Inmate; YELLOW ☐☐ Institution Use

Department of Corrections and Rehabilitation    CDC Form 695

# PELICAN BAY STATE PRISON    ⑧ Exh "C"
## SECURITY HOUSING UNIT
INMATE/PAROLEE APPEALS SCREENING FORM
### UNIT D-1

ROSBRUGH    Number: __J-81708__ Housing: __D1 213__

## YOUR APPEAL IS BEING REJECTED/CANCELLED AND RETURNED FOR THE FOLLOWING:

**Screening Appeals Rejection Criteria:**

[ ] 1.  The resolution is not within CDC's jurisdiction. See CCR, Title 15, Sections 3084.2(e) and 3084.3(c)(1).

[ ] 2.  The appeal duplicates the inmates previous appeal. See CCR, Title 15, Section 3084.3(c)(2).
    _____ for _____
 [ ] (a) Your appeal has been screened out on _____ Level, Log # _____
 [ ] (b) Your appeal is being reviewed at the _____ Level, Log # _____
 [ ] (c) Your appeal has been completed at the _____ Level, Log # _____

[X] 3.  The appeal concerns an anticipated action or decision. See CCR, Title 15, Section 3084.3(c)(3).

[ ] 4.  This appeal exceeds the 15 working days time limit, and the inmate has failed to offer a credible explanation as to why he could/did not submit the appeal within the time limit. See CCR, Title 15, Sections 3084.2(c), 3084.3(c)(6), and 3084.6(c).

[X] 5.  Abuse of the Appeal Process/Right to Appeal.
 [ ] (a) Excessive filings. Submission of more than one non-emergency appeal within a seven-calendar-day period is excessive. See CCR, Title 15, Section 3084.4(a).
 [ ] (b) Inappropriate statements. The Appeal contains false information, profanity, or obscene language. The appeal is rejected. See CCR, Title 15, Section 3084.4(b).
 [ ] (c) Excessive verbiage. Appeal cannot be understood or is obscured by pointless verbiage or voluminous, unrelated documentation. See CCR, Title 15, Section 3084.4(c).
  [ ] (1) Only allowed 1 added page, front and back, to describe the problem and action requested in Sections A and B, per CCR, Title 15, Section 3084.2(a)(1).
  [ ] (2) Only supporting documentation necessary to clarify appeal shall be attached to the appeal, per CCR, Title 15, Section 3084.2(a)(2).
 [ ] (d) Lack of cooperation. Appellant refused to cooperate and/or interview with the reviewer which has resulted in cancellation of the appeal, per CCR, Title 15, Section 3084.4(d).
  [ ] (1) Your appeal was screened out and returned to you with instructions:
    [ ] _____   [ ] _____
 [ ] (e) Failed to reasonably demonstrate the decision, action, policy, or condition is having an adverse affect upon the inmate's welfare, per CCR, Title 15, Section 3084.1(a).
 [ ] (f) This is a request for information. It is not an appeal. Write a note (GA-22, Request For Interview form or CDC-7362, Medical Request form).

[ ] 9.  Cannot appeal on behalf of another inmate/person. See CCR, Title 15, Sections 3084.2(d) and 3084.3(c)(7).

[ ] 10.  Issue resolved at previous level of Appeal review. See CCR, Title 15, Sections 3084.3(c)(8) and 3084.4(d).

Comments: YOU WERE APPROPRIATELY NOTIFIED OF CONFIDENTIAL INFORMATION THAT COULD AFFECT YOU IN THE FUTURE. IF/when OCS TAKES AN ACTION BASED ON THIS INFORMATION, YOU CAN APPEAL AT THAT TIME.

_C. Wilbz_    AUG 2 8 2007
     Date
C. E. WILBER
Appeals Coordinator

This screening decision may not be appealed unless you can support an argument that the above is inaccurate.
In such a case, please return this form to the Appeals Office with the necessary supporting information.

## PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE
PBSP    (Rev. 11/06)    CCR 3084.3(d)    PBSP

AUG 27 2007

 ⑧ Exh "C"

EXIBIT "D"

① Exhibit "D" — Screening Decision.

# PELICAN BAY STATE PRISON
## SECURITY HOUSING UNIT
### UNIT D-1

DEPARTMENT OF CORRECTIONS

STATE OF CALIFORNIA

Location: Institution/Parole Region   **PBSP**

Category **10/12**

1. _____   1. _____   Log No. _____

2. _____   2. _____

## INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| RosBRUGH | J-81708 | | D-1-213 |

**A. Describe Problem:** On 8-28-07, I received my 602 inmate appeal form back (doted 8-8-07) which was rejected because "the appeal contains an anticipated action or decision (Title 15 Section 5084.3(c)(2)). C.C. Wilbur. This is De Facto subject to appeal process was not in the Proda Tense. State & Federal Laws allows inmates to appeal any of the relevant clear in that inmates are and will be allowed to appeal any of the information concerning any inmates validation status, whether its learned (staff observation; view point; etc.) or to a Serial on, a CDC-1030 Form from I.G.I. while as long as it is put upon a formal document (such as ___

_If you need more space, attach one additional sheet._

**B. Action Requested:** That my appeal doten (August 6th 07) Enclosed be processed and issued a log number.

Inmate/Parolee Signature: _Cary Rosbrugh_   Date Submitted: **8-28-07**

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

Staff Signature: _____   Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____   Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

AUG 3 0 2007

7

① Exhibit "D"

continued A.                    (2) Exh. "D"

as a CDC 1030) and placed into said Inmates control File
(C-file) It is automatically subject to appeal.
C.E. Wilber This is the second time I've had to appeal
this said said Decision on the same matter (Inmate appeal
Dated July 27, 2007) in which you Reversed said Decision
based on lack of local knowledge, and granted my appeal
(Log # PBSP-D-07-01668) This is a blatant disregard
and of negligence on your part to Dissuade Inmates
housed in Pelican Bay state Prison (SHU) from continuing
and/or completing their 602 Inmate appeals. I expect
This matter to be collected and my 602 Inmate appeal
(Dated August 6th 07) and all attached Documents will
stay with said appeal and further Note, that this Prejudice
Towards myself will cease and Dissist.

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1

(2) Exh. "D"

California                                                                    Department of Corrections and Rehabilitation
                                                                              CDC Form 695

(3) Exhibit "D"

## INMATE/PAROLEE APPEALS SCREENING FORM

OSBRUGH          Number: J81708    Housing: D1 213

### YOUR APPEAL IS BEING REJECTED/CANCELLED AND RETURNED FOR THE FOLLOWING:

Screening Appeals Rejection Criteria:

[ ] 1.  The resolution is not within CDC's jurisdiction. See CCR, Title 15, Sections 3084.2(e) and 3084.3(c)(1).

[ ] 2.  The appeal duplicates the inmates previous appeal. See CCR, Title 15, Section 3084.3(c)(2).
    [ ] (a)  Your appeal has been screened out on _____ for _____.
    [ ] (b)  Your appeal is being reviewed at the _____ Level, Log # _____.
    [ ] (c)  Your appeal has been completed at the _____ Level, Log # _____.

[ ] 3.  The appeal concerns an anticipated action or decision. See CCR, Title 15, Section 3084.3(c)(3).

[ ] 6.  The appeal exceeds the 15 working days time limit, and the inmate has failed to offer a credible explanation as to why he could/did not submit the appeal within the time limit. See CCR, Title 15, Sections 3084.2(c), 3084.3(c)(6), and 3084.6(c).

[X] 8.  Abuse of the Appeal Process/Right to Appeal.
    [ ] (a)  Excessive filings. Submission of more than one non-emergency appeal within a seven-calendar-day period is excessive. See CCR, Title 15, Section 3084.4(a).
    [ ] (b)  Inappropriate statements. The Appeal contains false information, profanity, or obscene language. The appeal is rejected. See CCR, Title 15, Section 3084.4(b).
    [ ] (c)  Excessive verbiage. Appeal cannot be understood or is obscured by pointless verbiage or voluminous, unrelated documentation. See CCR, Title 15, Section 3084.4(c).
        [ ] (1)  Only allowed 1 added page, front and back, to describe the problem and action requested in Sections A and B, per CCR, Title 15, Section 3084.2(a)(1).
        [ ] (2)  Only supporting documentation necessary to clarify appeal shall be attached to the appeal, per CCR, Title 15, Section 3084.2(a)(2).
    [X] (d)  Lack of cooperation. Appellant refused to cooperate and/or interview with the reviewer which has resulted in cancellation of the appeal, per CCR, Title 15, Section 3084.4(d).    (DISPUTE screening DECISION)
        [ ] (1)  Your appeal was screened out and returned to you with instructions:
        [ ]    [ ]    [ ]
    [ ] (e)  Failed to reasonably demonstrate the decision, action, policy, or condition as having an adverse effect upon the inmate's welfare, per CCR, Title 15, Section 3084.1(a).
    [ ] (f)  This is a request for information. It is not an appeal. Write a note (GA-22, Request For Interview form or CDC-7362, Medical Request form).

[ ] 9.  Cannot appeal on behalf of another inmate/person. See CCR, Title 15, Sections 3084.2(d) and 3084.3(c)(7).

[ ] 10.  Issue resolved at previous level of Appeal review. See CCR, Title 15, Sections 3084.3(c)(8) and 3084.4(d).

Comments: YOU ABSOLUTELY HAVE THE RIGHT TO DISPUTE (APPEAL) YOUR INACTIVE REVIEW. YOUR APPEAL, HOWEVER, IS PREMATURE BASED ON D.O.M AND CCR 3084 WHICH DICTATE SCREENING DECISIONS.

C. Wilber                              SEP 0 5 2007
_____                _____
C. E. WILBER                           Date
Appeals Coordinator

This screening decision may not be appealed unless you can support an argument that the above is inaccurate. In such a case, please return this form to the Appeals Office with the necessary supporting information.

### PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

PBSP          (Rev.    11/06)      CCR 3084.3(d)          PBSP

(3) Exhibit "D"

AUG 3 0 2007

EXIBIT E "

(i) Exh. E

INACTIVE
REVIEW RECOMMEN
DATIONS

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region      Log No.          Category

PBSP

1. _____    1. _____    6/8
2. _____    2. _____    TO OCS

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification
committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff
member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting
documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken
for using the appeals procedure responsibly.

| NAME Rosbrugh | NUMBER J-84708 | ASSIGNMENT | UNIT/ROOM NUMBER D-1-213 |

A. Describe Problem: On 10-2-07 IGI Returned their Response to my Active/In-Active
Review, containing the (2) confidential Disclosure Forms (CDC-128-b) See attached
Exhibits "A & B". P. 1-2 along with (2) Forms that appear to be (I.G.I) cloons to
be looked upon as "Investigative Documents" See attached Exhibits "C-D" P.3-4.
All 4 Pages were Signed by I.G.I C/O T.S. Buchanan also by correctional
Lieutenant J.A. McKinney, also I.G.I.
now, In their (artificial) Investigation, C/O Buchanan Tries to Establish some
Sort of basis that Plaintif (me) (supposedly) is active Prison Gang member. Even

If you need more space, attach one additional sheet.

B. Action Requested: To Be Given "In-Active" Status. To Have These (2) (1030s) Be stricken
from my Files as that Do not state Specific acts, Dates, Times, Places of Alleged
Gang activity. I Request That (1030s) Not Be used against me now and in the
future. I Pursue Request under the Freedom of Information act. Any & all

Inmate/Parolee Signature: C.J. R.B          Date Submitted: 9-10-4-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____
_____
_____
_____
_____

Date Returned to Inmate: _____

Staff Signature: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and
submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____
_____
_____
_____
_____

Date Submitted: _____

Signature: _____                    CDC Appeal Number:
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

...LE PRISON
...NING UNIT
... D-1

OCT 09 2007

10

(i) Exh. E

CONTINUED A. (2)

ACTS. DATES. TIMES AND PLACES OF "ALLEGED GANG ACTIVITY. AND IS NOTHING

MORE THAN HERESAY & A LAUNDRY LIST.

(D) "ALLEGED" INFORMATION IN BOTH (1030'S) IS BEING IN-APPROPRIATELY USED BECAUSE

"1. NEITHER PROVIDES SPECIFIC ACTS DATES. TIMES, PLACES OF ALLEGED GANG ACTIVITY.

"2. BOTH 1030S ARE ENTIRE. HELE SAY. & LAUNDRY LISTS.

"3. ALLEGEDLY IMPLICATING YOURSELF IN CRIMINAL ACTIVITY MUST SHOW AND PROVE

THAT CRIMINAL ACTIVITY "PUNISHABLE" CRIMINAL ACTIVITY DID INDEED TAKE PLACE.

I'VE RECEIVED NO CASE NOR 115

"4. IF THE DEBRIEFER KNOWS HE WILL NOT BE PUNISHED BY IMPLICATING HIMSELF.

IN FACT. HE MUST BE PROTECTED. SELF INCRIMINATION IS NOT A VALID

METER FOR FACT & FICTION.

(E) I.G.I OFFICIALS ARE USING SCARE TACTICS & INTIMIDATION ON DEBRIEFERS WHO

HAVE ALREADY CROSSED THE LINE AND DO NOT WANT TO BE PLACED BACK IN

THE SHU AND ARE NOW AT THE MERCY OF I.G.I TO KEEP THEM SAFE AND

"REWARDED" FOR DEBRIEFING.

(F) BOTH (1030) FORMS ARE ENTIRE AND IN-ADMISSABLE AS EVIDENCE AND

DE-FACTO CAN LIGHT ON THE VERACITY & VALIDITY OF I.G.I STAFF FINDINGS.

NOT ONLY ON ME BUT EVERY OTHER INMATE WHO HAS SUCCUMBED TO THIS

VIOLATION OF BOTH EIGHT (8th) & FOURTEENTH (14) AMENDMENTS. AS WELL AS

THE COLOR OF LAW.

 AUTHORITIES CITED.

 8TH & 14TH AMENDMENTS. CASTILLO V ALAMEIDA. COLOR OF LAW.

CONTINUE 'B' ACTION REQUESTED

DOCUMENTS PERTAINING TO MY VALIDATION AND OR ACTIVE / IN-ACTIVE STATUS

AS AN ALLEGED PRISON GANG MEMBER.

I WOULD ALSO LIKE TO KNOW IF THESE DEBRIEFERS WERE GIVEN AND PASSED

POLYGRAPHS TO DETERMINE IF THEY ARE LYING.

(3) Exh: E

(2) EXH. E

continued A. 1

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1

reached out to other outside elements to find a link with my name through local law enforcement. The office of correctional safety. Police/leads and WSIN". To wit. Its found in not only inactive but that none of these "agencies" even know me. (See exhibits "E-D". P. 3-4)

According to the facts per CASTILLO V. ALAMEIDA Settlement

(A) "No Laundry Lists" Paragraph #21. That is where confidential sources. Including "Debriefers" identify a prisoner as an assoc./member by listing names of IM's without reference to specific gang related acts performed by IM's shall not be relied upon as a source item, confidential source items must identify gang activity/conduct performed by alleged assoc./member before such info can be considered as a source item.

"1. There is no specific date. Time. Place where this alleged gang activity took place. (confidential memo dated 6.22.06)

"2. This info "supposed" gang activity is based on debriefer(s) who she coerced into stating horrific statements by IGI officials, under pressure & duress they are more likely than not to invent lies to stay out of the (SHU) where the people they are "debriefing" about are housed.

"3. These "supposed" debriefers allegedly "incriminated" themselves in a criminal activity at the time of providing these false statements.

Debriefers will manipulate, misconstrue and or give up their own patents in order to stay out of the (SHU) Security Housing Unit. Also if this was such "incriminating evidence" why have I not received a C.D.C. 115 for this "punishable criminal activity."?

(B) confidential memo (1030) dated 5-22-06 does not state: specific acts, dates, times nor locations of "alleged" gang activity. It doesn't state anything other than "Heresay" that anyone can make up and invent just by knowing who you are in the SHU. (#23) CASTILLO V ALAMEIDA. Heresay cannot be used and will be expunged from any record. To wit: "Exclusive Reliance on "Heresay" from confidential sources [will not] be used as a source item for validation.

(C) confidential memo (1030) dated "July 16th 2004" does not give specific →

(2) EXH. E

EXHIBIT "E"
(4) - EXH.'E'

Pg. l

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**NAME: ROSBRUGH, Cody**          **CDC # J-81708**          CDC 128-B
(REV. 4/74)

On Friday, August 03, 2007, copies of all 1030 Confidential Disclosure forms for confidential documents being utilized during the Active/Inactive Review were provided to inmate **ROSBRUGH, J-81708** for his review. These documents are being submitted to the Office of Correctional Safety (OCS) relevant to an Active/Inactive review in order to update the gang status of inmate **ROSBRUGH**. Inmate **ROSBRUGH** has a GED and did not request staff assistance for his response.

1. Confidential Memorandum dated May 22, 2006; Documented is that **ROSBRUGH** was forwarding information regarding Aryan Brotherhood (AB) politics to another member of the NLR. Along with this information **ROSBRUGH** was also providing instruction on acts required to be accomplished by order of the AB. This activity associated with the AB is significantly related to the NLR as the formation and prison activities of the NLR have been conducted with the approval of the AB. NLR members have been utilized as group for recruitment into the AB. The politics of the NLR regarding the AB have been undecided with many NLR members taking the stance of "FTB" (Fuck the Brand) do to the manipulation of the NLR and arrogant attitudes displayed toward the NLR by AB members. **ROSBRUGH's** assistance with forwarding orders of the AB displays his personal feelings of the AB as been held in high regard. This document meets the criteria set forth in CCR 3378 (c) (8) (M), Debriefing reports.

\* *Issues appealed:* ++
THIS (1030) DOES NOT STATE SPECIFIC ACTS, DATES, TIMES, PLACES of "ALLEGED" GANG ACTIVITY.
A. SPECIFICALLY WAS I FORWARDING INFO TO? B. SPECIFICALLY DID I PROVIDE INSTRUCTION
B.? ON WHAT DATE? WHERE? THIS IS "HEARSAY". THIS STATES THE DATE THE DEBRIEFER
GAVE "S.I.?" PLEASE" INFO. IT DOES NOT GIVE THE DATE of MY "ALLEGED" GANG ACTIVITY.
WAS THIS DEBRIEFER INTIMIDATED of COERCED INTO GIVING FALSE or INCORRECT INFO
SO AS TO BE ABLE TO STAY OUT of THE SHU or G.P (GENERAL POPULATION)?
WHY WASN'T THIS RECORDED IN MY (810 CONFIDENTIAL INFO LISTING)?
IS THIS SINGLE ITEM A RUSE TO AQUIRE "HEARSAY" IN ORDER TO MAKE A QUOTA for I.G.I?
WAS THIS DEBRIEFER GIVEN AND PASSED A POLYGRAPH? WHERE WAS I WHEN THIS
"ALLEGED" ACTIVITY OCCURED?
WHAT INFORMATION SPECIFICALLY DID I ALLEGEDLY FORWARD?

2. Confidential Memorandum dated July 16, 2004; Documented is that **ROSBRUGH** is identified as a member of the NLR who is giving orders to other white inmates. **ROSBRUGH** is also identified as targeting inmates for assault if they do not comply with these orders. This document meets the criteria set forth in CCR 3378 (c) (8) (M), Debriefing reports.

*Issues appealed:* ++
THIS (1030) DOES NOT STATE SPECIFIC ACTS, DATES, TIMES, PLACES of "ALLEGED" GANG
ACTIVITY. WHO SPECIFICALLY DID I GIVE ORDERS TO? I'D LIKE TO CALL THEM AS WITNESSES.
WHO SPECIFICALLY DID I TARGET? I WOULD LIKE TO CALL THEM AS WITNESSES. WHERE
WAS I WHEN THIS "ALLEGED" ACTIVITY OCCURED? ON WHAT DATE? THIS FORM (1030)
STATES THE DATE THE "DEBRIEFER" GAVE SUPPOSED INFO. IT DOES NOT GIVE A DATE
AS TO MY "ALLEGED" GANG ACTIVITY. WHAT SPECIFICALLY WAS THE ORDERS' I WAS
ALLEGEDLY GIVING? WAS DEBRIEFER GIVEN A POLYGRAPH?
WAS THIS DEBRIEFER COERCED INTO GIVING FALSE or INCORRECT INFO SO AS TO
BE ABLE TO STAY OUT of THE SHU or G.P (GENERAL POPULATION)?
IS THIS A RUSE TO AQUIRE "HEARSAY" IN ORDER TO MAKE A QUOTA for I.G.I.

BOTH of THESE DOCUMENTS ARE UNTRUE. AND WOULD BE CASTILLO v ALAMEDA
DA IN-ADMISABLE AS EVIDENCE. AS "HEARSAY", "LAUNDRYLIST" AND THEY DO NOT GIVE SPECIFIC
DATES, TIMES, PLACES, ACTS of ALLEGED GANG ACTIVITY.

(S) Exh. "E"   EXHIBIT S   PT 2

This response form was collected from inmate **ROSBRUGH** on ___8-6-07___ by Gang Investigations Officer T. S. Buchanan. Inmate **ROSBRUGH's** response to these items will be considered by the Office of Correctional Safety prior to determining **ROSBRUGH's** gang status.

BUCHANAN, T. S.
Correctional Officer
Institution Gang Investigations
Pelican Bay State Prison

**DATE: August 3, 2007**          **GANG INVESTIGATION CHRONO**          **CDC 128B**

_CONTINUED —_

Both of These Documents Do Not Give Any Information, a SPECIFIC DATE. TIME. Place. ACT. They are VAGUE and Do Not State Anything But HeReSay.

I Request That They Be Removed from my File(S) and Not Now Nor In The FuTuRe Be used AGainst Me

I'D Further Like To Point out That Both Documents Give DATES THE DeBriefeR(s) Gave "InformATion". They Do Not Give The DATE my "Alleged" ActiviTy Took Place. Which Is The whole Point of ActiVe/InActive StaTus. When DID The activiTy Happen? NOT When DID The DeBriefeR DeBrief? ITs How You Pull FacT from FicTion.

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1

(S) Exh. "E"

Exhibit "e"   D1-213

STATE OF CALIFORNIA                                                DEPARTMENT OF CORRECTIONS

---

**NAME: ROSBRUGH, Cody**          **CDC # J-81708**          CDC 128-B (REV. 4/74)

On Thursday, July 26, 2007 an investigation was initiated, by the Institution Gang Investigation (IGI) Unit, in reference to inmate **Cody ROSBRUGH, J-81708, aka "Big Rhino from San Bernardino"** per the California Code of Regulations (CCR), Title 15, Section 3378 (e), in order to update his gang status. **ROSBRUGH** was validated as a member of the Nazi Low Rider prison gang on November 16, 1998; gang status was updated on CDC 128B-2 dated June 3, 2003. The source items used to validate **ROSBRUGH** are all over six (6) years old. Therefore, per the CCR, Title 15, Section 3378 (e), **ROSBRUGH** meets the criteria for an Inactive Status Review. During this current investigation the following areas were reviewed relevant to Nazi Low Rider prison gang activity.

**ARCHIVES: ROSBRUGH** has a discharged CDC number of **J-30361**. This number has been discharged in excess of six years; therefore, the associated archive file would contain no recent gang activity.

**CAL GANGS:** Was unable to provide any information involving current gang activities associated with **ROSBRUGH**.

**CELL SEARCH:** On Monday, July 30, 2007 **ROSBRUGH** was photographed for identification purposes relative to the inactive review. Upon conclusion of the photographing a search was conducted of **ROSBRUGH's** assigned cell to include all State and personal property. No gang related material was discovered during the course or the search.

**CENTRAL FILE:** A review into the Central File of **ROSBRUGH** revealed the following documents which contains recent activity with the Nazi Low Rider prison gang.

1. Confidential Memorandum dated May 22, 2006; Documented is that **ROSBRUGH** was forwarding information regarding Aryan Brotherhood (AB) politics to another member of the NLR. Along with this information **ROSBRUGH** was also providing instruction on acts required to be accomplished by order of the AB. This activity associated with the AB is significantly related to the NLR as the formation and prison activities of the NLR have been conducted with the approval of the AB. NLR members have been utilized as group for recruitment into the AB. The politics of the NLR regarding the AB have been undecided with many NLR members taking the stance of "FTB" (Fuck the Brand) do to the manipulation of the NLR and arrogant attitudes displayed toward the NLR by AB members. **ROSBRUGH's** assistance with forwarding orders of the AB displays his personal feelings of the AB as been held in high regard. This document meets the criteria set forth in CCR 3378 (c) (8) (M), Debriefing reports.

2. Confidential Memorandum dated July 16, 2004; Documented is that **ROSBRUGH** is identified as a member of the NLR who is giving orders to other white inmates. **ROSBRUGH** is also identified as targeting inmates for assault if they do not comply with these orders. This document meets the criteria set forth in CCR 3378 (c) (8) (M), Debriefing reports.

**LOCAL LAW ENFORCEMENT:** Was unable to provide any information involving current gang activities associated with **ROSBRUGH**.

**OFFICE OF CORRECTIONAL SAFETY:** Was unable to provide any information involving current gang activities associated with **ROSBRUGH**.

**PAROLES/LEADS:** Was unable to provide any information involving current gang activities associated with **ROSBRUGH**.

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1

(7) EXH. E

~~Exhibit D~~                        P11

**WSIN:** Was unable to provide any information involving current gang activities associated with **ROSBRUGH.**

On Friday, August 3, 2007, **ROSBRUGH** was issued 1030, Confidential Disclosure forms for the confidential documents utilized in the Inactive Status Review. **ROSBRUGH** was informed that the Institutional Gangs Investigation (IGI) Unit would interview him after 24 hours regarding the information used in the update. **ROSBRUGH** was informed that during the interview he would have the opportunity to present his response regarding the information used. **ROSBRUGH** has a GED and did not request staff assistance. **ROSBRUGH** is not a participant in the Mental Health Delivery System.

On Monday, August 6, 2007, **ROSBRUGH** was interviewed relative to the documents used in the review. **ROSBRUGH** submitted the two provided response sheets with his defense to the documents being used during the inactive review. All submitted documentation and supporting arguments have been considered, including the interview conducted during this review. Based on the information obtained during this investigation it is the opinion of this investigator the submission of this validation is warranted.

Based on the above information and documentation, it is reasonable to believe that **ROSBRUGH** is active with the Nazi Low Rider prison gang. The confidential documents reviewed comply with the Department Operations Manual (DOM), Section 61020.7 and requirements established in the CCR regarding prison gangs.

Pursuant to the CCR, Title 15, Section 3378 (c), the IGI Unit recommends that the gang status of **Cody, ROSBRUGH, J-81708, as a member of the Nazi Low Rider prison gang remain unchanged.** At **ROSBRUGH's** request, he will be eligible for an Inactive Gang Status Review after July of 2010. This date is based upon information contained in **ROSBRUGH's** central file, specifically the Confidential Memorandum dated May 22, 2006 evidencing NLR gang activity in July, 2004. This information will be forwarded to the Office of Correctional Safety to update **ROSBRUGH's** gang status.

BUCHANAN, T. S.
Correctional Officer
Institution Gang Investigations
Pelican Bay State Prison

J. A. MCKINNEY    LT.
Correctional Lieutenant
Institution Gang Investigator
Pelican Bay State Prison

*DATE: August 6, 2007*         *IGI GANG STATUS UPDATE*         *CDC 128B*

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1

(7) EXH. E

(8) Exh. "E"

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

October 9, 2007

**ROSBRUGH, J81708**
DF01U 000000213L

Log Number: PBSP-D-
(Note: Log numbers are not assigned to screen out appeals or informal level appeals.)

The enclosed documents are being returned to you for the following reasons:

*You are appealing an action or decision that has not yet occurred. Such issues are not appealable until they happen. (CCR 3084.3(c)(3)).*

*UPON RECEIPT OF UDATED 128-B2 FROM OCS, ATTACH AND FORWARD APPEAL AT THAT TIME.*

C. Wulf

Appeals Coordinator
Pelican Bay State Prison

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

OCT 0 9 2007                    (8) Exh. "E"

EXIBIT "F"

② Exh. ~B
9-21-07

**STATE OF CALIFORNIA**

# PELICAN BAY STATE PRISON
## SECURITY HOUSING UNIT
### PBSP

**DEPARTMENT OF CORRECTIONS**

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

1. ____ PBSP-1 ____    1. _____

2. _____    2. _____

Category 6/8

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Rosbrugh | NUMBER J-81708 | ASSIGNMENT | UNIT/ROOM NUMBER D-1-213 |
|---|---|---|---|

**A. Describe Problem:** On 10-5-07 I Received a C.D.C. 128-B chrono, stating that while conducting a search of Ilm Bartley J-21514 cell, an alleged Aryan Brotherhood associate, on September 19th 07, c/o S. Norton (I.G.I) found a 1999 calendar with the names of (3) individuals, one of the names. Allegedly mine. It stated that the date mentioned (marked) was my birthday. Where fore c/o S. Norton's opinion is that this is Direct Association between suspected validated members/assoc. and that this should be used as consideration for a point in the validation process. It is blatantly clear that I.G.I

If you need more space, attach one additional sheet.

**B. Action Requested:** For this 128-B chrono to be stricken from my central file and any other file as it does not prove anything. Least of all gang association. That I.G.I staff be retrained on what is & is not gang activity/association. And further that they (I.G.I) stop trying to pad files with false chronos.

Inmate/Parolee Signature: _C.Rosbrugh_    Date Submitted: 10-12-07

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

OCT 11 2007
10    OCT 17 2007
10

① Exh. F

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1

CONTINUED. ∆.

② EXH. F

C/O ZEBON is unaware of what is and is not Direct Association. Also that Federal and State law Prohibits staff such as He' from using ANY material such as Greating card. Dates of Saturdays and/or Birthday/farewell colds.

This is not only a Disregard for State and Federal law. It is "I & I Interpreting" the Rules & laws to fit their ideas and opinions

See State/Federal law. Case: Castillo, Steven vs. Edward S. Alameida (case No. C-94-2847-MJJ-JCS) Settlement Pos., S-G Paragraphs 15-16)

② EXH. F.

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
                                                                      CDC-128 B (c ?)
NAME and NUMBER        ROSBRUGH                      J-21514          CELL:   D01-213L

On Wednesday, September 19, 2007, while assigned to the Institutional Gang Investigations (IGI), I searched the property of validated Aryan Brotherhood (AB) associate Douglas BENTLEY J-21514, aka "Doug the Barber", D01-209L. Found amid the property of BENTLEY was calendar containing birthdates of three validated Nazi Low Rider members/ associates.

Written on August 16, was Rhino. Rhino has been identified as validated NLR member **Cody ROSBRUGH J-81708, aka "Rhino from San Bernardino"**, D.O.B. 8-16-1976.

On October 30, BENTLEY had written Flea. Flea has been identified as validated NLR member Lynden VANATTI E-21232 aka "Flea from Baldwin Park", D.O.B. 10-30-1966.

Written on December 10 was Lefty. Lefty has been identified as validated NLR associate Robert ENGLAND H-94119, aka "Lefty from Inland Empire", D.O.B. 12-10-1963.

With these names written on the specific date of their birthday in a validated AB associates personal calendar, clearly establishes a direct association between these identified NLR members/associates and an AB associate. This documentation should be considered as one point in the validation process of the listed inmates above as associates of the Aryan Brotherhood prison gang.

This documentation meets the criteria for gang involvement as prescribed in California Code of Regulations (CCR) Title 15, Section 3378 (c) (8) (G) Association.









ORIG    :  C-File
cc      :  GANGS

DATE      9-21-07                        **GANG CHRONO**

B. THORNTON
Correctional Officer
Institutional Gang Investigations
PBSP

③ Exhibit "f"

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

① Exhibit "f"

RE: Screening at the FIRST Level

October 12, 2007

**ROSBRUGH, J81708**
DF01U 000000213L

Log Number: PBSP-D-
(Note: Log numbers are not assigned to screen out appeals or informal level appeals.)

The enclosed documents are being returned to you for the following reasons:

*You are appealing an action or decision that has not yet occurred. Such issues are not appealable until they happen. (CCR 3084.3(c)(3)).*

*YOUR ARE ATTEMPTING TO APPEAL A 128-B INFORMATIONAL CHRONO OF STAFF'S OBSERVATIONS AS THEY PERCEIVED IT. THIS IS NOT A DISCIPLINARY CHRONO AND IN NO WAY ADVERSELY AFFECTS YOU AT THIS TIME. CCR 3084 REQUIRES "DEMONSTRATE AS HAVING AN ADVERSE AFFECT." THIS IS CURRENT, PRESENT TENSE LANGUAGE. SHOULD THIS INFORMATION BE USED TO ADVERSELY AFFECT YOUR CONDITIONS OF CONFINEMENT IN THE FUTURE, YOU CAN CERTAINLY APPEAL AT THAT TIME, HOWEVER THE REGULATIONS DO NO ALLOW FOR ACCEPTING YOUR APPEAL AT THIS POINT.*

C. Wilts
Appeals Coordinator
Pelican Bay State Prison

REBUTTAL REVIEWED.
SCREENING DECISION
STANDS.
L. WEBER, AC

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

OCT 1 1 2007

OCT 1 7 2007        ① Exhibit "f"

CC11 WilBer,

10-16-07

I would like you to Process my aPPeal.
This CHRONO Does aDValsely affect me Because It is NOT
a "staff obseRvation". it is His oPinion witH out any exPlanation
as to How this is Gang association aND it Goes BeyoND
staff "oPinion" wHen He say ( this DocumenTation sHould Be
used as one Point in tHe ValiDation Process.)
That cleaRly aDValsely affects me, aND tHe Pact tHat it
is in my File. as False Information.

Per title 15  3378(c)(8)(G)  c/o WalTon must Give a
articulte Reason wHy this "InfoRmation" is inDicative
of association. Factual. this Does aDvalsely affect me
Because it is NOT in my File FoR my Benifit. Its UseD
To keeP me VaLiDateD.

    I would aPPreciate it if youd Process my aPPeal
if staff aRe PeRmitTeD To make an obseRvation." tHats
Fine. But wHen tHey RecommenD an action Be taken
BaseD on tHeiR "obseRvation" its no longeR Just an
obseRvation.

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

D-1-213
P.O. BOX 7500
Crescent City CA. 95532

TO: COURT CLERK
US DISTRICT NORTHERN CA.
450 GOLDEN GATE AV.
SAN FRANCISCO CA.
94102

FILED

CLERK U.S. DISTRICT
NORTHERN DISTRICT OF CAL...

FEB 2 5 2008

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1

* LEGAL MAIL * 1 of 2

Attention Court Clerk.                                    2-17-08

Hello. I'm writing because my $5.00 filing fee was sent separately. I've just received the receipt.

I did not know it would be sent separately.

Here is the check #

283-149781

Also please send a copy of the stamped face sheet letting me know it was filed.

Thank you

CV 08    1178    JF    **(PR)**

Cody Rosbrugh - J-81708
D-1-213 / P.O. Box 7500
Crescent City, CA. 95532